Edna **WEDDINGTON,** Individually and Robin Weddington, a minor, by Edna Weddington, her custodial parent and next friend,

v.

Patricia **JACKSON.**

Civ. A. No. 68–1977.

United States District Court, E. D. Pennsylvania.

June 15, 1971.

1272

Philip M. Cagen, Vaparaiso, Ind., for plaintiff.

Albert C. Gekoski, Gekoski & Bogdanoff, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

HIGGINBOTHAM, District Judge.

On plaintiff's motion for summary judgment, the underlying issue is the validity of a release executed in Germany, without judicial approval, by the parents of a minor in settlement of a minor's tort claim. The plaintiff contends that as a matter of law, giving effect to such a release would violate the public policy of either Indiana or Pennsylvania—the jurisdictions which allegedly have the most significant contacts with the parties and occurrences in the present controversy, and that, therefore, this Court should find the release invalid. In the alternative, plaintiff contends that even if Germany is found to have the most significant contacts with the parties and occurrences, Pennsylvania would nevertheless refuse to give effect to the release because it is violative of the public policy of Pennsylvania. After full consideration of the difficult problems raised by the present motion, I have concluded, in accordance with the reasons set forth herein, that Germany has the most significant contacts with the parties and occurrences in question, and that, therefore, the law of Germany should be applied to determine the validity of the release. Second, I have concluded that the release in question, if valid under the law of Germany, is not violative of the public policy of Pennsylvania, and, therefore, may be given effect in this jurisdiction. The issue of whether the release is valid under German law, however, is left open at this time.

The background facts relevant to the determination of the present motion may be summarized as follows. On September 11, 1965, while in the vicinity of the American military personnel housing complex in Augusburg, Germany, the plaintiff was struck by an automobile operated by the defendant Patricia Jackson. It is alleged that as a result of this accident, plaintiff sustained extensive and permanent injuries, including serious injuries to the left and right lower extremities, to the abdominal wall and the region of the colon, disfigurement of her arms, legs, abdomen and right wrist, psychosis and neurosis arising out of the humiliation connected with the disfigurement, and the inability to walk without a limp.

On October 22, 1965, Robin's parents, Glenn and Edna L. Weddington, executed a release in satisfaction of any claim which Robin might have against the defendant, her husband, and defendant's insurer. The release, witnessed by an attorney apparently retained by the parents of the plaintiff, provided for the

payment of $5,000 and "medical, hospital, and doctor's costs". It was executed without court approval, which is not required under German law.

At the time of both the accident and the execution of the release, Robin resided with her parents in Augusburg, Germany, where her father had been assigned to duty by the United States Army. The minor plaintiff is a United States citizen and presently resides in Indiana with her mother. The defendant Patricia Jackson is also a United States citizen. At the time of the accident and the execution of the release, the defendant was in Augusburg, Germany accompanying her husband, who also had been assigned to duty there by the United States Army. The defendant was born in Pennsylvania and except for her absence while accompanying her husband on military assignments, has apparently been a lifetime resident of Pennsylvania.[1]

In the present action, Robin Weddington, suing as a minor by her mother and next friend, seeks to recover damages for injuries sustained as a result of the automobile accident in question.

The defendant asserts that the release, which is alleged to be valid under German law, bars any recovery by the minor plaintiff. By motion for summary judgment, the plaintiff seeks a determination that under the "significant contacts" or "center of gravity" approach to choice of law problems enunciated in Griffith v. United Air Lines, 416 Pa. 1, 203 A.2d 796 (1964) the release executed in Germany without Court approval is invalid under the law either of Pennsylvania or Indiana, and, therefore, can be given no effect in the present action.

At the outset, it is clear that in a diversity action, the District Court is bound to apply the choice of law rule of the jurisdiction in which it sits. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U. S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

In Griffith v. United Air Lines, 416 Pa. 1, 203 A.2d 796 (1964) the Pennsylvania Supreme Court adopted the rule that "torts should be governed by the local law of the state which has the most significant relationship with the occurrence and the parties." 203 A.2d at 802. The Court concluded that the place of injury rule for determining the choice of law in a tort action "should be abandoned in Pennsylvania in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." 203 A.2d at 805. In adopting this rule, the Pennsylvania Supreme Court quoted with approval from a decision of the New York Court of Appeals holding that "[j]ustice, fairness, and the 'best practical result' * * * may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." Babcock v. Jackson, 12 N.Y.2d 473, at 481, 240 N.Y. S.2d 743, at 749, 191 N.E.2d 279, at 283 (1963). 203 A.2d at 805.

In light of the choice of law principle adopted in *Griffith*, the first question before the Court is whether under Pennsylvania law the "significant contacts" principle is applicable in contract actions. The policy sustaining *Griffith*, and the Pennsylvania and Third Circuit decisions following it, indicate that the grouping of contacts, or center of gravity approach does apply in contract actions. *Griffith* was instituted by an executor on behalf of a decedent who, after purchasing a ticket in Philadelphia for a flight to Phoenix, was killed when the plane crashed while attempting a scheduled stop at Denver, Colorado. The cause of action asserted by the executor was that United had breached its "contract of non-negligent carriage" in regard to the decedent. 203 A.2d at

---

1. Defendant's answers to plaintiff's interrogatories, No. 7.

799. Although the plaintiff characterized his action as founded on breach of contract—in order to avoid the effect of a Colorado statute limiting recovery in wrongful death actions—the Court recognized that the "recovery sought is clearly a tort recovery—damages to decedent's estate as a result of decedent's negligently caused death." 203 A.2d at 800. In spite of the contract label supplied by the plaintiff, the cause of action asserted in *Griffith* was viewed by the Court as founded in tort, rather than contract. There is, however, no indication in *Griffith* that the Court's justification of the significant contacts principle was limited to cases of tort.

In Mannke v. Benjamin Moore & Co., 375 F.2d 281 (3rd Cir. 1967) the Third Circuit followed *Griffith* in holding that the validity of a release must be tested according to the law of the jurisdiction which was the "center of gravity" of the contest and which had "the most significant contacts with the matter in dispute." 375 F.2d at 283. In light of Mannke v. Benjamin Moore, *Griffith*, and other recent decisions,[2] I conclude that the grouping of contacts principle of *Griffith* should be applied to resolve the choice of law problems regarding the release in question.

## IV

The contacts of the various jurisdictions with the occurrences and parties may be identified as follows:

### A. *Pennsylvania*

Except for her absences from the state while accompanying her husband on tours of military duty, the defendant apparently has been a lifetime resident of Pennsylvania. The insurance company which negotiated the release in question apparently has a place of business in Pennsylvania.[3] Finally, Pennsylvania is the forum of the present litigation.

### B. *Germany*

As previously noted, the accident involving Robin Weddington occurred in Germany, and the release in question was executed in Germany. At the time of the accident and the execution of the release, the plaintiff, her parents, and the defendant resided in Germany. At the time of the accident, the defendant was licensed to operate an automobile by the United States military command, pursuant to authorization by the government of Germany.

### C. *Indiana*

The plaintiff presently resides in Indiana with her mother.

---

2. In accordance with the "center of gravity test" the law of Pennsylvania was held to govern the interpretation of a sales agency contract in Seneca Falls Machine Co. v. McBeth, 368 F.2d 915 (3rd Cir. 1966). In Goulding v. Sands, 237 F.Supp. 577 (W.D.Pa.1965) the significant contacts rule of *Griffith* was interpreted as applicable "in all cases involving choice of law problems and not just those dealing with personal injuries." 237 F.Supp. at 579. And in Slaughter v. Philadelphia National Bank, 417 F.2d 21 (3rd Cir. 1969) an action in replevin, the Court of Appeals noted that "Pennsylvania's approach to choice of law problems * * * is to analyze the policies and interests underlying the particular issue before the court and then apply the law of the state having the greatest interest and most direct contacts with the problem." 417 F.2d at 26, n. 8.

3. The release in question identified the insurer as the "National Union Fire Insurance Company of Pittsburgh, Pa., Frankfurt, Germany." The plaintiff alleges that this insurance company has its principal place of business in Pennsylvania. The defendant has, however, denied this particular allegation, claiming that the insurance company has its main office at 120 Maiden Lane, New York City. The defendant further claims that in its reliance on the name of the insurer (as the National Fire Insurance Company of Pittsburgh, Pa.) the plaintiff made the "incorrect determination" that the insurer "has some connection with Pennsylvania." The defendant has either clumsily, or very circumspectly failed to claim with specificity that the National Fire Insurance Co. of Pittsburgh, Pa. has no connection with Pennsylvania.

To select the jurisdiction whose law should govern determination of the validity of the release in question, *Griffith* and its progeny require the identification of the jurisdiction with the most significant contacts with the parties and occurrences in question. By this standard, it is clear that Germany has the most significant contacts with the parties and occurrences in question; therefore, the validity of the release before me should be measured by the law of Germany. The accident occurred and the release in question was executed in Germany. The plaintiff, her parents, and the defendant resided in Germany at the time of the accident and the execution of the release. In summary, the occurrences crucial to the present litigation all occurred in Germany, while all of the parties to the release resided there. As against this significant grouping of contacts with Germany, the contacts of the other jurisdictions do not appear substantial. The Republic of Germany has a legitimate and clear interest in the application of its law to settlements entered into in Germany regarding accidents occurring in Germany. Parties entering into settlement agreements in Germany should be able to do so with confidence in the validity and stability of the agreement as measured by German law. The prompt and equitable settlement of disputes occurring within its jurisdiction is a strong and valid interest of Germany in the application of its law in the present context. The encouragement of an orderly and reasonable process for the settlement of disputes is also a policy beneficial to potential claimants who are injured in Germany. In light of Germany's [4] significant contacts with, and interest in, the present controversy, this Court concludes that "justice and the best practical result" will be obtained by the application of the law of Germany to measure the validity of the present release.

## VI

The plaintiff contends that, even if German law is applicable because of Germany's significant contacts with the transaction, Pennsylvania would nevertheless refuse to give effect to the release in question because it was entered into without court approval, in violation of the fundamental public policy of Pennsylvania requiring judicial approval of a minor's tort claim settlement.[5] While I leave open the issue as to whether the release is valid under German law, I do rule now that if it is established that the release is valid under German law, it will be valid and enforceable under Pennsylvania law—even though it was not a court approved settlement. It is true that in regard to a transaction with which Pennsylvania has the most significant contacts, Pennsylvania law would require judicial approval of any settlement of a minor's claim for personal injuries. In the present action, however, I have already determined that Germany, rather than Pennsylvania, has the most significant contacts with the parties and occurrences in question, and therefore, the most substantial interest in the application of its own national law to measure the validity of the release in question.

In this posture, the release, if valid under German law, could be found invalid in Pennsylvania only if its enforce-

---

4. It should be noted that the contacts of Germany with the parties and occurrences here are more numerous and substantial than the contacts of Pennsylvania with the parties and occurrences in *Griffith*, where the law of Pennsylvania was found applicable. In *Griffith*, the ticket for the ill-fated plane trip was purchased in Philadelphia, the deceased was a domiciliary of Pennsylvania and the defendant regularly transacted business in Pennsylvania.

5. Pennsylvania Rules of Court, rule 2039 (as amended), 12 P.S. Appendix provides: No action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor." Adopted Feb. 14, 1939, effective September 4, 1939.

ment would contravene the express public policy of the forum. Pennsylvania will give effect to divorce decrees valid under the laws of Mexico and Nevada, even though the particular requirementss for obtaining a divorce in these jurisdictions are less stringent than in Pennsylvania. Commonwealth ex rel. Thompson v. Yarnell, 313 Pa. 244, 169 A. 370 (1934); Sandman v. Sandman, 81 Montg. 177 (1961); Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). Also, it has been stated that "the settled policy of the Commonwealth, as declared in its legislation, has been opposed to gambling in any form." In re Trombetta, 188 Pa. Super. 480, 149 A.2d 483, aff'd 397 Pa. 430, 156 A.2d 107, appeal dismissed 363 U.S. 720, 80 S.Ct. 1596, 4 L.Ed.2d 1521. Yet "in [an] action on [a] contract for sale of punch boards executed and performed by delivery to common carrier in Illinois, unless the fact that Illinois is the State of performance is challenged * * * there is no reason why under the principles of comity the law of Illinois should not be recognized as governing the contract, thus permitting its enforcement in Pennsylvania as a contract legal at the place of making and performance." Pioneer Mfg. Co. v. Bonnert, 89 Pa.Dist. & Co.R.2d 275 (1964).

If divorces obtained in Mexico and Nevada and contracts dealing with gambling equipment can be given effect in Pennsylvania without contravening the fundamental public policy of the forum, then the present release, if valid under German law, should similarly be given effect in Pennsylvania.

■ In conclusion, I find that the settlement of a minor's tort claim, entered into with the advice of counsel and with the consent of both parents, but without court approval, should not be denied enforcement in Pennsylvania if it is valid under the law of Germany. It should be recognized that under German law, a party apparently is not bound by a compromise settlement "where the indemnification in view of developments which had not been foreseen is manifestly out of proportion." [6] Thus, while not requiring prior judicial approval of the settlement of a minor's tort claim, German law does permit subsequent judicial inquiry into the substantial fairness of a settlement, with the possibility that the settlement may be modified or overturned if the required showing of disproportionality is made. Pennsylvania has adopted one procedure—that of prior judicial approval—as a prerequisite to the validity of the settlement of a minor's tort claim. Germany has not adopted this identical procedure, but I cannot conclude that the failure to include this identical procedure—in regard to a release signed in Germany regarding events transpiring in Germany—renders the release invalid and unenforceable under the law of Pennsylvania—especially where German law permits subsequent judicial inquiry into the substantial fairness of the settlement. Once it has been determined that a jurisdiction has a substantial interest in the application of its own law, principles of comity indicate that the forum should be reluctant to nullify an agreement which is valid under the laws of the most concerned jurisdiction. For these reasons, I conclude that the enforcement of the present release, if it is valid under German law, would not violate the public policy of Pennsylvania.

Accordingly, plaintiff's motion for summary judgment will be denied.

6. (Roman 6 ZR 95/60 published in Versickerungsrecht 1961, p. 381.)