**AMERICAN HOME ASSURANCE COMPANY**

v.

**AMERICAN EMPLOYERS INSUR-ANCE COMPANY et al.**

**Civ. A. No. 73-2419.**

United States District Court, E. D. Pennsylvania.

Oct. 21, 1974.

---

1. *See* Judge Bright's concurrence in Blanchard v. Brewer, 429 F.2d 89, 92 (8th Cir. 1970).

Thomas H. Goldsmith, Philadelphia, Pa., for plaintiff.

Glenn C. Equi, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

WEINER, District Judge.

In this action seeking a declaratory judgment, plaintiff has moved for summary judgment. The area of conflict can be divided into two issues. The first one revolves around the respective liabilities of excess insurance carriers and the second relates to the problem of adequate notice of an insured to its carrier.

We will at this point concentrate upon the first issue. The record establishes that in April of 1969 the defendant, American Employers Insurance Company (hereinafter referred to as Employers), issued an excess liability policy of insurance to KDI, an Ohio corporation. The policy covered subsidiaries of KDI and had a limit of $5,000,000 in excess of a required underlying coverage of $100,-000.

In June of 1970, KDI Sylvan Pools, Inc., a Pennsylvania corporation and a subsidiary of KDI, purchased an insurance policy from plaintiff, American Home Assurance Company (hereinafter referred to as Home). This policy was also secondary coverage in the amount of $2,000,000 and was specifically to be in excess of a primary underlying policy furnished by Pennsylvania Manufacturers Association (P.M.A.) in the amount of $250,000.

The seeds of this litigation were planted as the result of a settlement reached in a personal injury action instituted by one Joseph Donnelly who sustained severe injuries resulting in quadriplegia while using a swimming pool purchased from KDI Sylvan Pools. The amount of settlement was $890,000. The primary carrier, P.M.A., paid the first $250,000 and the balance was paid in equal amounts by Home and Employers with the stipulation that their respective rights and liabilities would be ultimately determined in the present litigation.

Each of the policies contained an "other insurance" clause. The Home policy in relevant part, provided:

If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder, this insurance shall be in excess of, and shall not contribute with such other insurance.

The Employers policy provision contained the following language:

> If any other valid and collectible insurance exists protecting the insured against ultimate net loss covered by this policy . . ., this policy shall be null and void with respect to such loss . . . ; provided, however, if the amounts recoverable by the insured under such other insurance are not sufficient to completely protect the insured against such loss, this policy shall apply but only as excess insurance over such other valid and collectible insurance, in an amount not to exceed the limit of the company's liability stated in this policy and not as contributing insurance.

Both plaintiff and defendant assert that the provisions recited above exonerate them from any liability. They have agreed that Pennsylvania law is to govern the determination of this issue.

Defendant Employers has cited the case of Allstate Ins. Co. v. Employers Liability Assurance Corp., 445 F.2d 1278 (5th Cir.1971) where two primary insurance carriers whose policies had clauses attempting to make them excess under the particular facts of that case were held subordinated to an Employers umbrella policy almost identical to the one in the present case. The *Allstate* ruling was based primarily on what the court discerned to be the intent of all the parties. The present case is considerably different as both policies involved here were initially secondary or umbrella type coverage and therefore stand on the same footing. Furthermore, the record does not show that at the time of issuance either the Home or Employers policy was intended to be in any way subordinated one to the other.

Both clauses here are attempting to accomplish the same result; that is, to make each company's policy in excess over any other "valid and collectible" insurance. When two very closely worded "other insurance" clauses have come into conflict, the judicial response has been to disregard them as mutually repugnant. *See, e.g.,* St. Paul Mercury Ins. Co. v. Underwriters at Lloyds of London, 365 F.2d 659 (10th Cir.1966); Green v. Benson, 271 F.Supp. 90, 96 (E.D.Pa. 1967); Cosmopolitan Ins. Co. v. Continental Casualty Co., 28 N.J. 554, 147 A. 2d 529 (1959); Continental Casualty Co. v. Aetna Casualty & Surety Co., 33 Pa. D. & C.2d 293 (1963).

Plaintiff Home urges that the case at bar is different because its policy contains an "excess type" clause while defendant's clause is of the "no liability" type. The typical "no liability" clause is similar to the one used by Employers except that it precludes any coverage even if the insured's losses exceed the policy limit of the other insurance. As such it is often referred to as an escape clause and disfavored by many courts.

■ In Grasberger v. Liebert and Obert, Inc., 335 Pa. 491, 6 A.2d 925 (1939) and Jamestown Mutual Insurance Co. v. Erie Insurance Exchange, 357 F.Supp. 933 (W.D.Pa.1972), "excess type" clauses were interpreted to prevail over "no liability" clauses. The reasoning of *Grasberger,* upon which *Jamestown* was based, is simply that policies with "excess type" clauses are not considered to be "other valid and collectible insurance" within the meaning of that term as it is used in "no liability" clauses. While such an interpretation is potentially applicable to the present facts, most modern decisions have not engaged in this type of semantical distinction when confronted with similar conflicting policy provisions each essentially designed to achieve the same result. *See, e.g.,* State Farm Mut. Auto Ins. Co. v. United States F. & G. Co., 490 F.2d 407, 411 (4th Cir.1974); United States F. & G. Co., Baltimore v. Liberty M. I. Co., Boston, 327 F.Supp. 462 (M.D. Pa.1971); Donegal Mut. Ins. Co. v. Transamerica Ins. Co., 62 Pa.D. & C.2d 374, 381 (1973). We believe that this also reflects the present thinking of the Pennsylvania appellate courts. In accordance therewith, it is our conclusion that both provisions are to be held mu-

tually repugnant and the excess loss should be prorated between the policies.

There remains the question of whether Employers is entitled to a declaration in its favor because of the alleged failure of KDI to give it adequate notice of the Donnelly claim.

■■ Initially, however, we must resolve a dispute among the parties as to which state law governs the determination of this issue. In our opinion, the weight of authority supports the position that Pennsylvania follows the "contacts" or Second Restatement approach to conflict of laws in the field of contracts. *See,* Neville Chemical Co. v. Union Carbide Corp., 422 F.2d 1205 (3d Cir.1970); Weddington v. Jackson, 331 F.Supp. 1271 (E.D.Pa.1971); *cf.* Griffith v. United Airlines, Inc., 416 Pa. 1, 203 A.2d 76 (1964); *but see* Pittsburgh Bridge & Iron Works v. Liberty Mutual Ins. Co., 444 F.2d 1286, 1288 n. 2 (3d Cir.1971); Boase v. Lee Rubber & Tire Corp., 437 F.2d 527 (3d Cir.1970). Applying this theory, it is our conclusion that Pennsylvania is the state with the most significant relationship to this part of the controversy. Pennsylvania was the state where most of the incidents which gave rise to the underlying claim occurred and, furthermore, it is the place where KDI Sylvan Pools, the insured risk, was located. *See,* Restatement (Second) of Conflict of Laws § 193, & § 193 comment g (1969).

The facts pertinent to this issue will now be set forth.

· Employers had a provision in its policy which, in relevant part, provided:

Notice of Occurrence. When an occurrence takes place which, in the opinion of the insured, involves or may involve liability on the part of the company, prompt written notice shall be given by or on behalf of the insured to the company or any of its authorized representatives . . . . Failure to so notify the company of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to a claim hereunder shall not prejudice such claim provided such notice is then given.

Although KDI Sylvan Pools first learned of the Donnelly claim in May of 1971, Employers was not notified of the claim until May of 1973. This delay appears to have resulted primarily because KDI relied on the advice of its insurance broker, Marsh & McLennan, that Employers need not be notified until the Donnelly claim exceeded $1,250,000. It was only when settlement demands in excess of that amount became known to KDI that Employers was notified.

Home contends that Employers notice provision is not violated as long as the insured subjectively did not form the opinion that the Employers policy may become involved. We cannot agree. We believe that the clause should be construed as requiring Employers to be put on notice whenever in the opinion of the insured it *reasonably* appears that the policy may be involved. *Cf.* Kraus v. Allstate Ins. Co., 258 F.Supp. 407, 411 (W.D.Pa.1966), aff'd, 379 F.2d 443 (3d Cir.1967).

■ In light of the ambiguity of Employers notice clause, whether KDI should have notified the defendant in spite of the advice from its insurance broker is, in our opinion, a question of fact not appropriate for summary judgment. The special circumstances of this case make it impossible to determine as a matter of law the reasonableness of KDI's actions. *See* Unverzagt v. Prestera, 339 Pa. 141, 13 A.2d 46 (1940).

It is our conclusion that in the event that a trial of the notice issue would result in a determination that KDI gave proper notice to defendant, the parties shall contribute in equal amounts to the Donnelly settlement.