164 N.J. Super. 184 (1978)
395 A.2d 923
PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, AS SUBROGEES OF LEOLA NIXON AND WARREN NIXON, PLAINTIFF,
v.
NEW HAMPSHIRE INSURANCE COMPANY AND FIREMAN'S FUND INSURANCE COMPANIES, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 15, 1978.
*185 Ms. Janet P. Moore for plaintiff (Messrs. Enright, Porter & Leslie, attorneys).
*186 Mr. Henry A. Larner for defendant New Hampshire Insurance Company (Messrs. Budd, Larner, Kent, Gross, Picillo & Rosenbaum, attorneys).
Mr. C. Kennon Hendrix for defendant Fireman's Fund (Mr. Roy D. Cummins, attorney).
GIBSON, J.C.C. (temporarily assigned).
This declaratory judgment action requires a determination of the respective obligations of the above-named insurance companies concerning losses incurred as a result of an automobile accident for which each has potential responsibility. The factual setting, although relatively simple, is complicated by reason of the conflicting policy language, the impact of which calls into question not only "secondary" but also "tertiary" coverage issues. Although the issues thus raised have received attention at the federal level, there do not appear to be any reported New Jersey cases on point.
This matter comes before the court on cross-motions for summary judgment, all parties agreeing that the material facts are not in dispute. R. 4:46-1. Those facts show that on September 30, 1973, as a result of a two-car accident involving vehicles owned respectively by Pastore Orchards, Inc. and Warren Nixon, the driver in the latter vehicle was killed and her two passengers were seriously injured. Nixon's vehicle was insured by the plaintiff Prudential Property & Casualty Insurance Company (hereinafter Pru-Pac), which insurance included New Jersey No-Fault benefits. Those benefits were paid to the occupants of Nixon's car and Pru-Pac thereafter sought reimbursement from the companies providing coverage to the other vehicle.[1] The car owned by Pastore Orchards, Inc. was driven by Neil H. *187 Pastore, Jr.[2] and was potentially covered by three different policies of insurance:
(a) New Hampshire Insurance Company (New Hampshire) providing basic automobile liability insurance with limits of $100,000/$300,000;
(b) New Hampshire Insurance Company providing personal professional catastrophe indemnity excess coverage in the amount of $1,000,000;
(c) Fireman's Fund Insurance Company (Fireman's Fund) covering Neil Pastore's personal vehicle and any "temporary substitute vehicle" driven by him, with limits of $100,000/$300,000.
A separate suit had been instituted for the personal injuries of the driver and the passengers of the Nixon vehicle, which action culminated in a settlement for $495,000. Under its basic automobile liability policy New Hampshire paid its limits of $300,000. A dispute then arose between Fireman's Fund and New Hampshire as to whether the remaining monies would come from the policy insuring Pastore or the excess policy covering Pastore Orchards, Inc. To facilitate the settlement it was agreed that each company would contribute to the sum due and settle their differences at a later date. The present motion seeks to resolve that dispute and it is agreed that the resolution of that question will also determine the issue of responsibility to Pru-Pac, its right of recovery being admitted.[3]
It appears clear from a review of the various policies that the $100,000/$300,000 policy issued by New Hampshire to Pastore Orchard, Inc. provided the primary coverage for this accident. No party suggests otherwise. It also appears clear that Fireman's Fund's policy is likewise designed to *188 provide primary insurance arising out of the ownership or use of its insured's automobile. However, since the vehicle operated by Neil Pastore was not his own, Fireman's Fund argues that the "temporary substitute vehicle" provision of its policy comes into play, thereby activating the "other insurance" clause. That clause provides only excess coverage and reads as follows:
* * * provided, however, the insurance with respect to a temporary substitute automobile or a non-owned automobile shall be excess insurance over any other valid and collectible insurance.
The second New Hampshire policy is an umbrella policy which provides coverage:
To indemnify the insured for ultimate net loss which the insured shall become legally obligated to pay in excess of the applicable underlying (or retained) limit because of personal injury or property damage occurring during the policy period * * *.
Under the "limits" provision the company is liable only for the "ultimate net loss" resulting from any one occurrence in excess of the insured's underlying or retained limit and "the amounts of any other underlying insurance collectible by the insured * * *." Also, the policy contains an "other insurance" clause which reads as follows:
Other Insurance: The insurance afforded by this policy shall be excess insurance over any other valid and collectible insurance available to the insured and applicable to any part of ultimate net loss, whether such other insurance is stated to be primary, contributing, excess or contingent; provided that if such other insurance provides indemnity only in excess of a stated amount of liability per occurrence, the insurance afforded by this policy shall contribute therewith with respect to such part of ultimate net loss as is covered hereunder, but the company shall not be liable for a greater proportion of such loss than the amount which would have been payable under this policy bears to the sum of said amount and the amounts which would have been payable under each other excess indemnity policy applicable to such loss, had each such policy been the only policy so applicable.
*189 It is argued by Fireman's Fund that where two automobile liability insurance policies apply to the same accident, the "other insurance" provisions of each document are to be consulted. American Sur. Co. of New York v. American Indem. Co., 8 N.J. Super. 343 (Ch. Div. 1958). Those provisions are generally standard in their language and contain either what is referred to as a "pro rata" clause or an "excess" clause; that is, the policy either indicates that its coverage shall be shared with other available insurance on a pro rata basis or it will be deemed to be excess and therefore available only after all other coverages are exhausted. Ibid. If one policy is the "pro rata" type and the other is "excess," the law of this state indicates that the "pro rata" clause is to be disregarded in favor of the "excess" clause, and accordingly the policy with the "pro rata" language becomes primary. Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 562 (1959). Fireman's Fund suggests that the language in the "other insurance" clause of New Hampshire's policy is of the pro rata type and that the corresponding clause in its own policy is the excess type, thereby requiring New Hampshire to bear responsibility for the entire amount in controversy here. This argument, however, ignores the opening language of the clause in question, that is, "The insurance afforded by this policy shall be excess insurance * * *." The "pro rata" language that is contained in that clause indicates that such an obligation comes into play only where the other insurance provides indemnity "in excess of a stated amount of liability per occurrence * * *." What is contemplated is a separate excess policy, not the situation here, where the Fireman's Fund policy, basically primary in nature, becomes excess only because of the fact that the insured is using a temporary substitute vehicle.
Left open by the above conclusion is the question of whether the "excess" language of the two policies creates an impasse thereby requiring the companies here to share in the responsibility for the amounts still due on this loss. See *190 Cosmopolitan Ins. Co. v. Continental Cas. Co., supra. As noted, each company claims to provide only excess coverage, thus creating an apparent conflict. When the "other insurance" clauses of two insurance policies come into conflict, the judicial response is to disregard them as being mutually repugnant, thereby requiring that the loss be pro-rated. Ibid; see also, American Home Assur. Co. v. American Employers Ins. Co., 384 F. Supp. 3 (E.D. Pa. 1974). For the reasons stated below, however, it is the opinion of this court that this doctrine is not applicable here.
In the Cosmopolitan case the court was faced with two primary policies which, like the Fireman's Fund policy, became excess because of the nature of the accident. In American Home there were two excess policies which contained mutually conflicting clauses. Here the Fireman's Fund coverage became excess because of the substitute vehicle. The New Hampshire umbrella policy, however, remained excess in every instance except when faced with a policy providing indemnity in excess of a stated amount of liability per occurrence. It has been pointed out that the excess coverage by Fireman's Fund was not of that type. Accordingly, it would still be underlying insurance vis-a-vis the umbrella policy. At best Fireman's Fund's other insurance clause creates secondary status for its coverage in relation to a primary carrier and places it on equal footing with a policy which, like itself, became excess because of the nature of the accident. In contrast, the coverage of the New Hampshire umbrella policy maintains its excess position against "any other valid and collectible insurance * * *, whether such other insurance is stated to be primary, contributing, excess or contingent * * *." Under such circumstances the language of the two policies is not mutually repugnant.
What, then, is the relative responsibility of the companies here? At the outset it was noted that the obligation for the primary liability created by this accident was met by the payment of the limits under the basic automobile policy *191 issued by New Hampshire. As between the remaining policies we are faced on the one hand with what is essentially a primary automobile policy, made excess as a result of the fact that its insured was driving a borrowed car. Next, we have what is clearly an umbrella policy, providing excess coverage only in the absence of other collectible insurance. From the language of these policies it would appear that Fireman's Fund's "other insurance clause" has the effect of merely changing its status from that of a primary to a secondary carrier. The practical result here was to place the primary obligation on the initial New Hampshire policy. That was done. However, since the limits under that policy have been exhausted, Fireman's Fund's "excess" coverage thereby comes into play. That status does not put it in a position of equality with the coverage provided by the umbrella policy of New Hampshire.
In an analogous setting the same conclusion was reached in the federal case of Allstate Ins. Co. v. Employers Liability Assur. Corp., 445 F.2d 1278 (5 Cir.1971). There the court was faced with three companies, all claiming to be excess on the basis of their "other insurance" clauses. Two of the companies were primary carriers but, like Fireman's Fund here, became excess because of the manner in which their insured was involved. The third carrier was an excess carrier under an umbrella policy. The facts which gave rise to the case were as follows: a leasing company entered into a contract to rent a car to a partnership under the terms of which it agreed to purchase a public liability policy covering both lessor to lessee (policy A). The leasing company already had an umbrella policy covering a number of its businesses, including the lessor here (policy B). The leased car, while driven by a partner of the lessee, was involved in an accident causing serious injuries. A lawsuit ensued and was eventually settled for an amount exceeding the basic policy described above (policy A). The other carriers contributed to the excess and then instituted the above declaratory judgment *192 action. The contributing carriers included the company providing the umbrella policy (policy B), the lessee's own automobile policy (policy C), and the driver's automobile policy (policy D). Policies C and D each had an "other insurance" clause similar to that of Fireman's Fund here  that is, policies excluding their primary status in favor of excess coverage when their insured was using a substitute (or leased) vehicle. Policy B, as indicated, was an umbrella policy with an "other insurance" covering only against an "ultimate net loss." The court held that the language of the policies should be analyzed "in the light of the circumstances of each contracting party, to determine the intention of each contract within the design of a consistent overall insuring scheme." Id. at 1283. It went on to hold that the umbrella policy (policy B) was unique within the group involved, it alone having assumed only residual loss coverage in every event. The court noted that such coverage was most appropriately designated "contingent excess." The court therefore ruled that the two other carriers, which became excess only because of the lease, were required to share the burden of the unsatisfied portion loss on a pro rata basis. Since their coverages were adequate to meet the settlement needs, the umbrella coverage never came into play.
The above holding has been cited with approval by several other federal cases, including the following: Aetna Ins. Co. v. State Auto Mut. Ins. Co., 368 F. Supp. 1278, 1281 (W.D. Ky. 1973)[4]; American Home Assur. Co. v. American Employers Ins. Co., 384 F. Supp. 3, 5 (E.D. Pa. 1974), and Berkeley v. Fireman's Fund Ins. Co., 407 F. Supp. 960, 969 n. 19 (W.D. Wash. 1975).
It is the opinion of this court, therefore, that under the facts of this case and the policy language involved, the status *193 of the Fireman's Fund policy, though stated to be excess, is still considered as "underlying insurance," in relation to the umbrella policy of New Hampshire. Accordingly, the coverage by New Hampshire does not come into play until the Fireman's Fund policy has been exhausted. Whether that coverage will be needed here must await the determination of the extent of plaintiff's claim. New Hampshire's motion for summary judgment will be granted.
NOTES
[1] The above claim is being pursued in accordance with the subrogation provisions of N.J.S.A. 39:6A-9.
[2] Pastore was not employed by the corporate owner and was operating the car for his personal use at the time.
[3] Although the plaintiff's right to recovery is not contested, the amount due is still the subject of dispute.
[4] In the Aetna Insurance Co. case the "other insurance" clause was identical to the clause found in the New Hampshire umbrella policy here.