LIBERTY MUTUAL INSURANCE
COMPANY et al.

v.

HARBOR INSURANCE COMPANY.

No. 90–565–Appeal.

Supreme Court of Rhode Island.

Feb. 3, 1992.

Charles J. Vucci, Providence, for plaintiffs.

Michael Gardiner, Gunning, LaFazia & Gnys, Providence, for defendant.

## OPINION

KELLEHER, Justice.

The plaintiffs, Liberty Mutual Insurance Company (Liberty) and Antonio Viveiros (Viveiros), appeal from the grant by a Superior Court justice of summary judgment in favor of the defendant, Harbor Insurance Company (Harbor), in a declaratory-judgment action that sought to determine the relative liability of the two insurers. The facts of the case are uncontested.

The record indicates that on October 17, 1982, Viveiros rented an automobile from Rent–A–Ride, Inc. (Rent–A–Ride), which is located in Fall River, Massachusetts. Later that day, while driving the rental vehicle in Rhode Island, Viveiros was involved in an automobile collision with one Linda Murray (Murray). As a result of the collision, Murray suffered personal injuries and brought suit against Viveiros and Rent–A–Ride in the United States District Court for the District of Rhode Island.

At the time of this incident there were three insurance policies in effect covering the risk of the collision. Integrity Insurance Company (Integrity) had issued a general-liability motor-vehicle policy to Rent–A–Ride, providing primary coverage on the insured rental vehicle. In addition Rent–A–Ride had also taken out an excess-liability policy with Harbor. Finally Liberty had issued Viveiros a primary automobile-liability policy.

Negotiations were entered into, and as the trial justice noted, "like two good insurance carriers, on the eve of trial, settlement seemed to be in the best interest of every-

one, and the amount of the claim was determined to be fifty thousand dollars." Rent–A–Ride's primary insurer, Integrity, paid $25,000 toward the settlement.[1] Viveiros's primary carrier, Liberty, contributed the other $25,000 in satisfaction of Murray's claim. Harbor refused to contribute toward the settlement under its excess-liability policy issued to Rent–A–Ride. Liberty subsequently brought a declaratory-judgment action in Providence County Superior Court, seeking indemnification from Harbor. Harbor in turn filed a motion for summary judgment, which the trial justice granted, and Liberty now appeals.

The issue raised in this appeal is a novel one in this jurisdiction. The anomaly involved in establishing a payment order among multiple insurers covering the same risk arises from the fact that insurers contract not with one another but contract separately with the insured. Moreover, each insurer competes with other insurers to limit the rights of its insured in order to distance itself further from the obligation to pay when multiple policies are involved.

Liberty argues that once the limits of the Integrity policy were exhausted, the next tier of insurance available was that afforded under the Harbor policy. Liberty cites a provision in its policy commonly known in insurance parlance as an "excess" or "other insurance" clause to support its position that Harbor should indemnify Liberty for its $25,000 payment to Murray.[2] The clause reads in pertinent part, "[W]e will

pay damages to people injured or killed in accidents if you or a household member is legally responsible for the accident. * * * *If someone covered under this Part is using an auto he or she does not own at the time of the accident, the owner's auto insurance must pay its limits before we pay."* (Emphasis added.) It is Liberty's position that applying the clear and unambiguous language of this clause leads to the conclusion that Liberty only becomes liable when Rent–A–Ride's insurance, including both the Integrity and the Harbor policies, is exhausted. Liberty also contends that Rent–A–Ride voluntarily acknowledged that its legal obligation exceeded the limits of the underlying Integrity policy and that Harbor therefore becomes liable under the terms of its policy.

Harbor argues that as a true excess carrier its liability attaches only after all available primary insurance is exhausted. Harbor also contends that it is precluded from liability because Rent–A–Ride never became legally obligated to pay beyond the limits of the Integrity policy. To support its position, Harbor cites language in its policy that states that its liability only attaches when "the insured has paid or has become *legally obligated to pay* the 'ultimate net loss' in excess of such underlying insurance." (Emphasis added.) The policy defines "ultimate net loss" as "all sums actually paid by the insured, *or which the insured is legally obligated to pay."* (Emphasis added.)

1. The rental agreement signed by Viveiros contained the following provision entitled "Public Liability Protection Available to Lessee," which states: "(a) In the event the leased vehicle is involved in any accident, the liability of Lessor to Renter or any other persons involved therein, and in any one accident shall be limited to limits required by the State in which vehicle is operated. In no case less than $10,000.00 per person, $20,000.00 per accident bodily injury $5,000.00 per accident property damage." Since the collision occurred in Rhode Island, the bodily-injury coverage was increased to $25,000 in accordance with G.L. 1956 (1982 Reenactment) § 31–32–2. This protection was provided by an automobile liability policy issued to Rent–A–Ride through Integrity Insurance.

2. "In general there are four types of 'other insurance' clauses used. These are (1) the pro rata clause which provides that the insurer

will pay its share of the loss in the proportion its policy limits relates to the aggregate liability coverage available; (2) the 'excess' clause which provides that the insurer's liability is limited to that amount of the loss exceeding the limits of other available insurance; (3) the 'escape' clause which provides that the insurer is not liable if other coverage is available; and (4) the 'excess-escape' clause which provides that the insurer's liability is limited to that amount of the loss exceeding the limits of other available insurance and that the insurer is not liable when the other available insurance contains limits equal to or in excess of its own limits." *Employers Fire Ins. Co. v. Baker,* 119 R.I. 734, 742, 383 A.2d 1005, 1009 (1978). *See* Welch, *Conflicts Between "Other Insurance" Clauses in Automobile Liability Insurance Policies,* 20 Hastings L.J. 1292 (1969).

In deciding a case of first impression, we often look to leading authorities and the law of other jurisdictions for guidance in making our determination. The Harbor policy was clearly labeled "Excess Liability Policy." Such policies have been defined in the following manner:

> "One very important type of coverage in these days of potentially high verdicts is that provided by so-called umbrella or catastrophe policies. Briefly, these are policies of insurance sold at comparatively modest cost to pick up where primary coverages end, in order to provide an extended protection up to a million, five million, ten million, or more. It gives a financial security, as well as peace of mind, to the individual purchasing such coverage who is hopeful that he will never be involved in any substantial claim or lawsuit, but, if he is, is desirous of not losing the security it may have taken a lifetime to acquire.

> \*   \*   \*   \*   \*   \*

> "The courts are not ignorant of the desirable socio-economic consequences attendant upon the providing of umbrella or catastrophe coverages. They recognize that this involves no attempt upon the part of a primary insurer to limit a portion of its risk by describing it as 'excess,' nor the employment of devices to escape responsibility. Therefore, umbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses." 8A J. Appleman, *Insurance Law & Practice,* § 4909.85 at 452, 453–54 (1981).

■ When faced with conflicts that exist between an umbrella policy and an essentially primary policy made excess by a no-nownership clause, a majority of jurisdictions have adopted the rule that the umbrella policy need not contribute until after the primary coverage is exhausted. *Allstate Insurance Co. v. Employers Liability Assurance Corp.,* 445 F.2d 1278 (5th Cir.1971) (*Allstate*); *see Allstate Insurance Co. v. American Hardware Mutual Insurance Co.,* 865 F.2d 592 (4th Cir.1989); *Occidental Fire & Casualty Co. of North Carolina v. Brocious,* 772 F.2d 47 (3d Cir. 1985); *Insurance Co. of North America v. American Economy Insurance Co.,* 746 F.Supp. 59 (W.D.Okla.1990); *Berkeley v. Fireman's Fund Insurance Co.,* 407 F.Supp. 960 (W.D.Wash.1975); *Aetna Insurance Co. v. State Automobile Mutual Insurance Co.,* 368 F.Supp. 1278 (W.D.Ky. 1973); *United Services Automobile Ass'n v. Empire Fire & Marine Insurance Co.,* 134 Ariz. 64, 653 P.2d 712 (1982); *Allstate Insurance Co. v. Frank B. Hall & Co.,* 770 P.2d 1342 (Colo.Ct.App.1989); *United States Fire Insurance Co. v. Maryland Casualty Co.,* 52 Md.App. 269, 447 A.2d 896 (1982); *Prudential Property & Casualty Insurance Co. v. New Hampshire Insurance Co.,* 164 N.J.Super. 184, 395 A.2d 923 (1978); *State Farm Fire & Casualty Co. v. LiMauro,* 65 N.Y.2d 369, 482 N.E.2d 13, 492 N.Y.S.2d 534 (1985); *Liberty Mutual Insurance Co. v. United States Fire Insurance Co.,* 590 S.W.2d 783 (Tex.Civ. App.1979); *see also* Annotation, *Automobile Insurance: Umbrella or Catastrophe Policy Automobile Liability Coverage as Affected by Primary Policy "Other Insurance" Clause,* 67 A.L.R.4th 14 (1989).

■ *Allstate* is a leading case addressing conflicts involving multiple insurers with competing insuring clauses. When faced, as we are here, with policies containing clauses that may not be readily resolved by "word logic," the *Allstate* court noted that "courts should determine whether coverage priorities can be allocated in the light of total policy insuring intent." *Allstate,* 445 F.2d at 1284. Applying this approach, we find that the Harbor policy is a classic umbrella policy as evidenced by the $6–per–car–per–month premium paid by Rent–A–Ride.[3] The intent of Rent–A–Ride in securing such coverage is to protect itself should it become legally liable to pay in excess of the Integrity policy. We find

---

**3.** See *Occidental Fire & Casualty Co. of North Carolina v. Brocious,* 772 F.2d 47 (3d Cir.1985), where the court notes that umbrella policies are sold at comparatively modest prices and only pick up when underlying policies are exhausted.

nothing in the record to justify Liberty's assertion that Rent–A–Ride voluntarily acknowledged that its legal obligation exceeded the limits of the Integrity policy. In fact, the release agreement entered into by Rent–A–Ride, Viveiros, and Murray specifically precludes an admission of liability on behalf of Rent–A–Ride. Furthermore the intent of the Harbor policy is not to protect Viveiros should he incur liability; rather that is the intent of the Liberty policy.

■ For the reasons stated above, we adopt the rule that when a conflict regarding the order of payment arises between an umbrella policy and a primary policy containing an "other insurance" clause, liability of the umbrella carrier does not attach until the primary policy is exhausted. Accordingly Liberty's appeal is denied and dismissed, and the judgment of the Superior Court is affirmed.