[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Plaintiff, Textron Inc. ("Textron") brings this action against Defendant, Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("INA"). Plaintiff seeks to recover benefits under the terms and conditions of a policy of insurance it purchased from INA. The parties have filed cross motions for partial Summary Judgment urging the Court to accept their respective positions as to the scope of coverage afforded Textron under the INA policy. For the reasons set forth below, the Court accepts Defendant's interpretation of the policy language and finds as a matter of law that the INA policy does not "drop down" to provide primary coverage to Plaintiff in spite of the fact that the underlying coverage is not collectible. Plaintiff's motion for partial summary judgment is denied. Defendant's motion for partial summary judgment is granted.
 BACKGROUND
Textron has incurred substantial expenses relating to the defense, investigation and remediation of environmental sites resulting from liability claims asserted against it. Plaintiff alleges that damages it incurred are covered under a policy of insurance with liability limits of $5,000,000 issued to it by INA. The policy was issued on March 24, 1963 and remained in effect until January 1, 1966. The parties dispute the meaning of the following policy language:
Retained limit — Limit of Liability
 . . . the company's liability shall be only for the ultimate net loss in excess of the insured's retained limit defined as the greater of.
 (a) the total of the applicable limit(s) of the underlying policy(ies) listed in Schedule A hereof, and the applicable limit(s) of any other underlying insurance collectible by the insured; or
 (b) $10,000 as the result of any one occurrence not covered by the said policy(ies) or insurance. (Altieri Aff. Ex. A-4-A-5)
Schedule A lists a liability policy with limits of $1,000,000 issued by Liberty Mutual Insurance Company (Liberty Mutual) as the applicable underlying coverage. (Altieri Aff. Ex. A-14-A-16). That underlying insurance is not collectible by Textron in accordance with a decision of the Rhode Island Supreme Court.See Textron, Inc. v. Liberty Mut. Ins. Co., 639 A.2d 1358
(R.I. 1994). During the term of its coverage with INA, Textron was insured with Liberty Mutual under successive comprehensive general-liability policies. The Liberty Mutual policies contain a notice requirement that excludes coverage for claims which are not reported to the carrier within a year after expiration of the policy period unless the insured continues to maintain liability coverage with Liberty Mutual. Textron changed carriers more than one year prior to reporting the subject liability claims to Liberty Mutual. In Textron, Inc. v. Liberty Mut. Ins. Co.,639 A.2d 1358, the Court ruled that the Liberty Mutual policies were not collectible because Textron failed to comply with the aforementioned notice requirement.
Plaintiff now seeks to require INA to "drop down" and provide the first $5,000,000 layer of liability coverage for the claims against it. Textron contends that the INA policy contemplates that the total limits of the underlying policy listed in Schedule A are collectible, and if not, then the INA policy provides primary coverage for damage after the $10,000 retainage has been exhausted. Textron relies upon the following language in the INA policy:
 "(a) the total of the applicable limit(s) of the underlying policy(ies) listed in Schedule A hereof, and the applicable limit(s) of any other underlying insurance collectible by the insured." (Altieri Aff. Ex. A-5).
Plaintiff reasons that the phrase "and the applicable limits(s) of any other underlying insurance collectible by the insured" suggests that the limits of the underlying policy listed in Schedule A must be "collectible." Plaintiff argues that to find otherwise would ignore the word "other." Textron maintains that by using the words "other underlying insurance collectible by the insured" the policy language presumes that the limits of the underlying policy are also "collectible by the insured."
Defendant disagrees and cites the following policy provision in support of its position:
"O. Maintenance of Underlying Insurance
 It is warranted by the insured that the underlying policy(ies) listed in Schedule A, or renewals or replacements thereof not more restricted, shall be maintained in force as collectible insurance during the currency of this policy, except for any reduction of the aggregate limit(s) contained therein solely by reason of losses in respect of occurrences happening during the policy period. In the event of failure by the insured so to maintain such policy(ies) or to meet all conditions and warranties subsequent to loss under such policy(ies), the insurance afforded by this policy shall apply in the same manner it would have applied had such policy(ies) been so maintained in force." (Altieri Aff. Ex. A-10)
 APPLICABLE LAW
Pursuant to Rule 56, Super. R. Civ. P., the parties have filed cross motions for partial summary judgment support of their respective positions. The standard by which the trial justice decides a motion for summary judgment is clear. In determining a motion for summary judgment, the trial justice must review the pleadings, affidavits, and other appropriate evidence in the light most favorable to the party opposing the motion. If, when the evidence is viewed in such light, no material issues of fact exist and the movant is entitled to judgment as a matter of law, the trial justice must enter summary judgment. Textron, Inc. v.Liberty Mutual, 639 A.2d 1358.
When determining coverage questions, the Court must examine the precise terms and conditions of the policy in question. Textron,Inc. v. Liberty Mutual. When presented with a preprinted-form policy with an endorsement (or in this case a schedule attached thereto), the Court must review the two components together, with the terms of the preprinted form remaining intact except to the extent they are altered by the endorsements. See Textron, Inc.v. Liberty Mutual, citing from 13A John Appleman and Jean Appleman, Insurance Law and Practice, § 7537 at 143-44 (1976). The Court must give the policy language in the pre-printed policy, its endorsements, and in this case, Schedule A, its plain, ordinary, and usual meaning. Textron, Inc. v. LibertyMutual; Malo v. Aetna Casualty and Surety Co., 459 A.2d 954,956 (R.I. 1983); Bush v. Nationwide Mutual Insurance Co.,448 A.2d 782, 784 (R.I. 1982). "The test to be applied is not what the insurer intended by his words, but what the ordinary reader and purchaser would have understood them to mean." Town ofCumberland v. Rhode Island Interlocal Risk Management Trust,Inc., et al. 860 A.2d 1210 (R.I. 2004), Pressman v. AetnaCasualty and Surety Co., 574 A.2d 757, 760 (R.I. 1990) (quotingElliott Leases Cars, Inc. v. Quigley, 118 R.I. 321, 326,373 A.2d 810, 812 (1977)). If the terms are clear and unambiguous, the Court enforces the policy as written and refrains from engaging in any judicial modification of the policy terms. Id.;Amica Mutual Insurance Co. v. Streicker, 583 A.2d 550, 551
(R.I. 1990); Malo, 459 A.2d at 956.
Both parties have cited several cases which they contend support their respective positions. The Court is persuaded by the cases cited by Defendant.
Plaintiff relies upon the holding in Geerdes v. St. Paul Fire Marine Ins. Co., 341 N.W.2d 195, 197 (Mich.Ct.App. 1983) as interpreting identical policy language to that contained in the INA policy. The holding in Geerdes clearly supports Plaintiff's interpretation of the pertinent clause. However, this Court is not bound by the decision in Geerdes and disagrees with the Michigan Court's construction of the provision.
Mr. Geerdes had underlying coverage on his vehicle with liability limits of $50,000. His father carried insurance on his own vehicle with limits of $300,000. Geerdes was also insured under his father's umbrella policy issued by St. Paul Fire 
Marine Ins. Co. (St. Paul). Schedule A on the St. Paul policy listed both Geerde's underlying $50,000 policy and his father's underlying $300,000 policy. Geerdes was involved in a motor vehicle collision, and a liability claim in excess of $50,000 was asserted against him.
St. Paul took the position that its coverage did not apply until the liability claims against Geerdes reached $350,000. Geerdes contended that the umbrella policy provided him coverage for all losses in excess of $50,000. With that factual backdrop, the Michigan Court interpreted the policy language in favor of the Plaintiff and found that the only applicable policies on Schedule A are those that are collectible by the insured. The Court determined that the provision was unambiguous and clear and should be construed according to its plain sense and meaning. The Court in Geerdes based its ruling on the clause "other underlying insurance collectible by the insured" and determined that the word "other" would be mere surplusage if not interpreted to mean that the only underlying policies to be considered in the calculation, whether scheduled or not, were those which provided coverage.
In interpreting the policy provision, the Michigan Court did not consider whether the umbrella policy would have provided primary coverage if Geerdes' own scheduled underlying liability policy was uncollectible. The Court construed the language in conjunction with the fact that Schedule A listed one policy covering Geerdes' vehicle and another covering his father's vehicle. It is clear that the ordinary reader who purchases such a policy reasonably expects that he or she is paying for a second layer of coverage, without a gap. St. Paul's construction of the policy language creates an automatic gap in coverage for liability claims asserted against either Geerdes or his father. Such construction would achieve an absurd result and would violate plain sense and meaning. For that reason, the Court agrees with the result reached in Geerdes, but not the reasoning.
Defendant relies upon a contrary ruling by the Court of Appeals of Washington in Federal Insurance Co. v. Pacific Sheet Metal,Inc., 774 P. 2d 514 (Wash.App. 1989). In that case, the policy holder claimed that an umbrella policy should "drop down" and provide primary coverage to the insured when the underlying carrier became insolvent. In denying the claim, the Washington Court specifically rejected the construction of the word "other" adopted by the Michigan Court in Geerdes. The Court stated:
 ". . . we believe that the word "other" must be considered in context. The phrase at issue, "other underlying insurance collectible by the insured", is separated from the rest of the clause by a comma and the connecting word "plus".[1] In contrast to the Geerdes court, we define the word "other" as "not being the one first mentioned". The adjective "collectible" modifies only the noun "insurance" which directly precedes it. The clause defining ultimate net loss is not ambiguous: it obligates Federal to pay only the excess over the scheduled limits plus the limits of any other underlying insurance that is collectible by the insured. . . ." Federal Insurance Co. v. Pacific Sheet Metal, Inc., 774 P. 2d. at 538.
The Court accepts the policy construction set forth in FederalInsurance Co. over that enunciated by the Court in Geerdes.
The provision is clear and unambiguous. It provides coverage after "the total of the applicable limit(s) of the underlying policy (ies listed in Schedule A" is exhausted. As set forth in the clause governing "Maintenance of Underlying Insurance," in the event that Textron fails to maintain such underlying coverage or to meet its conditions, the INA policy "shall apply in the same manner it would have applied had such policy(ies) been so maintained in force." (Altieri Aff. Ex. A-10).
Plaintiff relies upon the phrase concerning "other underlying insurance" in support of its contention that the policy should be construed to permit "drop down" coverage. The Court disagrees and interprets that clause to further limit, not expand INA's coverage. Before the insured can obtain benefits under the INA policy, it must not only exhaust the liability limits of the scheduled underlying coverage, but must also exhaust liability limits from any other collectible underlying policy. There is no obligation to maintain such additional unscheduled coverage, but if it is maintained and is collectible, INA is not liable to pay any claim until such unscheduled collectible policy limits have been exhausted.
Plaintiff argues that the Court should follow the holding inGeerdes over that in the Federal Insurance Co. case. Plaintiff notes that the First Circuit Court cited Geerdes with approval while applying Rhode Island law in Fashion House, Inc.v. K-mart Corp., 892 F.2d 1076 (1st Cir. 1989). However, inFashion House, the Court cites Geerdes solely for the proposition that "no word should be considered surplusage if it may serve a reasonable purpose." That is true, but it is also clear that the Court should not construe policy language to achieve an absurd result inconsistent with what the ordinary reader and purchaser would have understood the language to mean. Additionally, if the Court accepted the position advanced by Textron, it would be treating as surplusage provision "O" of the INA policy, pertaining to "Maintenance of Underlying Insurance."
The Court is guided by a decision of the Rhode Island Supreme Court in Liberty Mutual Insurance Company et al., v. HarborInsurance Company, 603 A.2d 300 (RI 1992). The case is factually different from the instant one, but it is relevant because the Court describes the purpose behind excess coverage and so-called umbrella or catastrophe policies. The Court stated:
 ". . . these are policies of insurance sold at comparatively modest cost to pick up where primary coverages end, in order to provide an extended protection up to a million, five million, ten million, or more. It gives a financial security, as well as peace of mind, to the individual purchasing such coverage who is hopeful that he will never be involved in any substantial claim or lawsuit, but, if he is, is desirous of not losing the security it may have taken a lifetime to acquire."
 "The courts are not ignorant of the desirable socio-economic consequences attendant upon the providing of umbrella or catastrophe coverages. They recognize that this involves no attempt upon the part of a primary insurer to limit a portion of its risk by describing it as `excess,' nor the employment of devices to escape responsibility. Therefore, umbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses." quoting 8A J. Appleman, Insurance Law Practice, § 4909.85 at 452, 453-54 (1981).
With this in mind, the Court rejected the arguments of Liberty Mutual that its primary coverage should be excess to the Harbor policy and ruled that liability of the umbrella carrier does not attach until the primary policy is exhausted. Likewise, liability of the umbrella carrier does not "drop down" if the insured permits its underlying coverage to lapse. In this case, by changing carriers, Plaintiff permitted its "tail" coverage to lapse. To accept Textron's interpretation of the INA policy would thwart the purpose of true excess coverage as set forth inLiberty Mutual Insurance Company et al., v. Harbor InsuranceCompany, 603 A.2d 300.
 CONCLUSION
For the foregoing reasons, the Court finds that the INA policy is clear and unambiguous. When the policy is considered as a whole, it does not provide "drop down" coverage. Plaintiff's motion for partial summary judgment is denied. Defendant's motion for partial summary judgment is granted.
Counsel shall submit the appropriate order for entry by the Court after notice.
[1] In the INA policy, the word "and" appears instead of the word "plus". However, the difference does not change the meaning of the clause.