*371
 
 OPINION OF THE COURT
 

 Meyer, J.
 

 An umbrella policy, which covers multiple risks but offers no primary coverage as to any of them and provides that it “shall be in excess of, and shall not contribute with” other collectible insurance covering a loss available to the insured, except such as in excess of the limits of the umbrella policy, is not required to contribute toward a loss until the limits of a liability policy covering the injury-causing automobile as a nonowned vehicle have been exhausted. Although the latter policy’s “other insurance” provision makes it excess over other insurance on the injury-causing vehicle, that provision is ineffective as to the umbrella policy. The order of the Appellate Division should, therefore, be affirmed, with costs.
 

 I
 

 As a result of a collision between an automobile owned by Gatillo LiMauro and operated by Vincent Navarro and an automobile owned by Kinney Auto Rental Corp. and operated by John Fagan, Maureen LiMauro, a passenger in the LiMauro vehicle was killed and Fagan was injured. Maureen LiMauro’s administrator brought an action for wrongful death against the owners and operators of both vehicles seeking damages of $2,000,000. In a separate personal injury action against Gatillo LiMauro and Vincent Navarro, Fagan claimed damages of $1,000,000.
 

 The issue for determination in the declaratory judgment action out of which this appeal arises is the order of contribution to such judgments as may be obtained in the underlying actions by two of the three carriers whose policies covered the owner and operator of the LiMauro vehicle. State Farm Mutual Automobile Insurance Co. (“Mutual”) issued to Gatillo and Agata LiMauro its “car policy” with limits of $100,000 per person and $300,000 per accident covering their vehicle when operated by them or any other person using their car with, and within the scope of, their consent. Aetna Casualty and Surety Company (“Aetna”) issued to Vincent Navarro its “family automobile policy” with like limits of $100,000 and $300,000, under which Navarro was covered when operating a nonowned automobile. State Farm Fire and Casualty Company (“Fire”), an entity separate from Mutual, issued to Gatillo and Agata LiMauro its “success protector policy” with a liability limit of $1,000,000, covering personal injury or property damage arising out of operation of an automobile, watercraft or aircraft or of business or rental property, and
 
 *372
 
 as to the operation of an automobile covered not only the named insured but also any person operating the vehicle with, and within the scope of, the consent of the named insured.
 

 It is not disputed that the LiMauro vehicle was being operated by Navarro with, and within the scope of, the consent of the LiMauros or that Mutual’s policy provides primary coverage. The present action, begun by Fire, asks a declaration that it is not required to contribute until Aetna’s policy limits are exhausted. Aetna argues that its policy is excess over Fire’s or, alternatively, is concurrent with it. Special Term held that both policies covered the injuries for which recovery was sought and should contribute in proportion to their limits. It reasoned that otherwise Fire would be permitted to “escape liability by merely providing for many situations rather than one specific occurrence.” The Appellate Division reversed, concluding that the policies “did not, in fact, cover the same insurable risk” (103 AD2d, at p 519) and that the Aetna policy had to be exhausted before Fire was obligated by its policy to pay. For the reasons hereafter stated, we affirm, though on somewhat different reasoning.
 

 II
 

 The anomaly involved in establishing a pecking order among multiple insurers covering the same risk arises from the fact that although the insurers contract not with each other but separately with one or more persons insured, each attempts by specific limitation upon the rights of its insured to distance itself further from the obligation to pay than have the others. The result has been characterized as “a court’s nightmare * * * filled with circumlocution”
 
 (Carriers Ins. Co. v American Home Assur. Co.,
 
 512 F2d 360, 362), compared sarcastically to the “struggles which often ensue when guests attempt to pick up the tab for their dinner companions”
 
 (Insurance Co. of N. Am. v Continental Cas. Co.,
 
 575 F2d 1070, 1071), and produced, it has been said, judicial decisions that are “difficult to interpret and in some instances impossible to reconcile”
 
 (United Servs. Auto Assn. v Empire Fire & Mar. Ins. Co.,
 
 134 Ariz 64, 65, 653 P2d 712, 713). It has also produced an expression of surprise that the courts, rather than the insurance industry’s arbitration mechanism, are resorted to so frequently to adjudicate the issue
 
 (Insurance Co. of N. Am. v Continental Cas. Co., supra,
 
 at p 1072; Tobriner,
 
 Foreword, Symposium: California Insurance Law,
 
 13 Pac LJ 829,830), and we add our own wonderment that the problem has not long since been dealt with by legislation
 
 [1]
 
 or Insurance Department regulation.
 

 
 *373
 
 Case law solutions of the problem have been many and varied, originally requiring exhaustion first of the policy issued first, of the policy insuring the primary tort-feasor, of the policy deemed the more specific, among others, and, more recently, interpretation of the various “excess,” “escape,” “super-excess” and “super-escape” clauses incorporated in different carriers’ policies (Kurtock,
 
 Overlapping Liability Coverage
 
 —
 
 “The Other Insurance” Provision,
 
 25 Fedn Ins Counsel Q 45; Mattison,
 
 “Other Insurance” Clauses: The Lamb-Weston Doctrine,
 
 47 Ore L Rev 430; Welch,
 
 Conflicts Between “Other Insurance” Clauses in Automobile Liability Insurance Policies,
 
 20 Hastings U 1292; Notes: 65 Colum L Rev 319; 38 Minn L Rev 838). As our case law has developed it has rejected as an exercise in “meaningless semantics” the effort to determine which among policies covering the risk which occurred is the more specific
 
 (Federal Ins. Co. v Atlantic Natl. Ins. Co.,
 
 25 NY2d 71), but recognised the right of each insurer to rely upon the terms of its own contract with its insured
 
 (New York Dock Co. v Brown, Inc.,
 
 272 NY 176,180;
 
 see, Newin Corp. v Hartford Acc. & Indem. Co.,
 
 62 NY2d 916, 919;
 
 Davis v De Frank,
 
 27 NY2d 924).
 

 In evaluating the effect between carriers of the language of their policies, we have held an owner’s policy providing for pro rata contribution with other valid and collectible insurance to be primary and the driver’s policy containing a nonowned vehicle clause making it excess over other valid and collectible insurance to be secondary, reasoning that the effect of the language of the owner’s policy was “only to require prorata contribution by other primary insurance”
 
 (General Acc. Fire & Life Assur. Co. v Piazza,
 
 4 NY2d 659, 669). The contrary result obtained, however, where the owner’s policy contained a “no liability” escape clause which covered a third person driving with the owner’s permission, “but only if no other valid and collectible automobile liability insurance, either primary or excess * * * is available to such person”, the owner’s carrier being freed by that policy clause of any obligation to contribute with the driver’s insurer notwithstanding the nonowned excess clause in the latter policy
 
 (Davis v De Frank,
 
 27 NY2d 924,
 
 supra).
 
 But as to the confrontation between the driver’s policy’s nonowned excess clause and the owner’s policy provision making it excess as to all of its coverage whenever there was any other policy encompassing the loss, we have required pro rata contribution between the carriers
 
 (Federal Ins. Co. v Atlantic Natl. Ins. Co., supra).
 
 In that situation, both having contracted to cover the same risk on the
 
 *374
 
 same level, neither is permitted to argue that the other must bear the entire risk
 
 (see, Continental Cas. Co. v Equitable Life Assur. Socy.,
 
 52 NY2d 228, 233) because the effect of a contrary holding would be to leave the insured with no coverage at all
 
 (Lumbermens Mut. Cas. Co. v Allstate Ins. Co.,
 
 51 NY2d 651;
 
 Federal Ins. Co. v Atlantic Natl. Ins. Co., supra).
 
 In such a case the excess coverage clauses are deemed to cancel each other out and each carrier is required to contribute ratably in such proportion as its policy limit bears to the total of all policy limits
 
 (Lumbermens Mut. Cas. Co. v Allstate Ins. Co., supra; see, Continental Cas. Co. v Equitable Life Assur. Socy., supra).
 

 The latter rule is, however, inapplicable when its use would distort the meaning of the terms of the policies involved
 
 (Lumbermens Mut. Cas. Co. v Allstate Ins. Co., supra,
 
 at p 655). Whether there will be such distortion turns on consideration of the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it
 
 (id.,
 
 at pp 656-657), as well as upon the wording of its provision concerning excess insurance
 
 (id.; Kansas City Fire & Mar. Ins. Co. v Hartford Ins. Group,
 
 57 NY2d 920).
 

 The
 
 Lumbermens
 
 case well illustrates the principles, for it involved three layers of coverage. Primary insurance was provided by Allstate to the corporate owner of the injury-causing car. Allstate had also issued to the mother of the driver insurance on her personal car which included coverage of her son while driving a nonowned automobile, but provided as to such coverage that if there was other insurance its nonowned automobile coverage would be “excess insurance over any other collectible insurance.” Allstate had also issued to the driver’s father an executive policy covering “net loss in excess of insured’s retained limit”, which listed as part of the retained limit the Allstate policy issued to the driver’s mother, and provided that its coverage was “excess insurance, not contributory to other collectible insurance (other than insurance applying as excess to Allstate’s limit of liability hereunder) available to the Insured” covering the loss. A fourth policy issued by Lumbermens to a business group of which the corporate owner of the car was a member and denominated a “Catastrophe Policy” provided coverage in excess of “any other valid and collectible insurance available to the insured, whether such other insurance is stated to be primary, contributing, excess or contingent.” We held that the Allstate policy issued to the driver’s mother was excess to the corporate owner’s primary insurance but did not contribute ratably with the executive policy issued to the
 
 *375
 
 driver’s father because the specific reference in that policy to the mother’s policy as part of the retained limits made clear the intention of the parties that the executive policy not contribute until the mother’s policy had been exhausted.
 

 The Lumbermens policy was, however, held to be excess to all three Allstate policies because its provision that its coverage was in excess of all other coverage available, including excess coverage, established that the parties to that policy had not bargained for ratable contribution with any of the Allstate policies, because the language of the Allstate executive policy recognized that there could be coverage in excess of its coverage and because to require Lumbermens to contribute ratably with Allstate’s excess coverage would make it difficult if not impossible for an insurance purchaser to obtain final tier (or, as it is referred to in the industry, “umbrella”) coverage at a premium reduced to reflect the lesser risk to the insurer.
 

 On like reasoning, in
 
 Public Serv. Mut. Ins. Co. v Fireman’s Fund Am. Ins. Cos.
 
 (55 NY2d 868,
 
 affg
 
 82 AD2d 403), ratable contribution was required between Public Service, the umbrella insurer of the vehicle owner, and INA, the umbrella insurer of the lessee-operator, where the latter’s policy recognized that there could be coverage in excess of its coverage and provided for ratable contribution in that event, and Public Service, although the language of its policy made it excess to any policy, excess or otherwise, unless the other policy stated specifically that it was to be in excess of the Public Service policy, asserted no claim that it was entitled to be held excess to the INA policy. Contribution was also required in
 
 Kansas City Fire & Mar. Ins. Co. v Hartford Ins. Group
 
 (57 NY2d 920,
 
 supra)
 
 between the insurer of a bus being used as a temporary substitute automobile, whose policy provided that it was excess over any other valid and collectible insurance, and the excess automobile liability insurer of the bus owner, whose policy provided that it was excess over insurance issued to the owner by a specifically named primary insurer, because neither policy contained language specifically making one an excess insurer over all other excess insurers covering the same risk or the meaning , of which would be distorted by requiring contribution between them.
 

 The rule to be distilled from these cases is that an insurance policy which purports to be excess coverage but contemplates contribution with other excess policies or does not by the language used negate that possibility must contribute ratably with a similar policy, but must be exhausted before a policy which expressly negates contribution with other carriers, or otherwise
 
 *376
 
 manifests that it is intended to be excess over other excess policies
 
 (Aetna Cas. & Sur. Co. v Liberty Mut. Ins. Co.,
 
 91 AD2d 317;
 
 see, Jefferson Ins. Co. v Glens Falls Ins. Co.,
 
 88 AD2d 925). Indicative of such an intent, though not conclusive, may be the fact that a policy is issued as “umbrella” or “catastrophe” coverage, at rates which reflect the reduced risk insured
 
 (Lumbermens Mut. Cas. Co. v Allstate Ins. Co., supra; Chicago Ins. Co. v Dominguez,
 
 420 So 2d 882, 884,
 
 review denied sub nom. Associated Insurers v Chicago Ins. Co.,
 
 430 So 2d 450 [Fla];
 
 see, Trinity Universal Ins. Co. v Metzger,
 
 360 So 2d 960, 962 [Ala]).
 

 Ill
 

 Tested against the foregoing rules, the result reached by the Appellate Division is clearly correct. The Aetna policy was issued as a family automobile policy with specified per-person and per-occurrence limits. Except as to a nonowned or temporary substitute automobile it was primary coverage, as its “other insurance” clause made clear: “If the Insured has other insurance against a loss covered by the Liability Coverage of this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.” The juxtaposition in that clause of provision for pro rata contribution with all insurance except as to a nonowned automobile strongly suggests that what Aetna sought to achieve was an excess position with respect to other primary insurance covering the nonowned vehicle, rather than an intention to place itself on an equal or better footing with all other insurance excess to the primary insurance.
 

 The Fire policy, on the other hand, offered no primary coverage at all. Sold under the fanciful name of a “success protector policy,” covering not only automobile risks but risks of many other types, it provided only coverage “in excess of the retained limit,” which it defined, in pertinent part, as “the total limit(s) of liability of any underlying insurance collectible by the Insured,” and required that underlying insurance be maintained in minimum amounts of $100,000/$300,000 for automobile or recreational vehicle liability and $100,000 for comprehensive personal liability and apartment liability. It also contained an “other insurance” clause reading: “If other collectible insurance with any other insurer is available to the Insured covering a loss
 
 *377
 
 also covered hereunder (except insurance purchased to apply in excess of the sum of the Retained Limit — Coverage L and the limit of liability hereunder), the insurance hereunder shall be in excess of, and shall not contribute with, such other insurance.” By specifically providing that as to a loss covered by it and by other insurance it was to be excess over, and not contribute with, the other insurance “except insurance purchased to apply in excess of the sum of the Retained Limit * * * and the limit of liability hereunder” (that is, to apply in excess of $1,100,000 per person or $1,300,000 per occurrence), the Fire policy negated any intention to contribute with other policies except such as were purchased as excess over its excess insurance,
 
 [2]
 
 which the Aetna policy clearly was not. Although Aetna’s clause provides that it shall be excess over “any other valid and collectible insurance,” the intent and effect of the Fire policy provision is that it is collectible with respect to a loss in excess of its $100,000/$300,000 retained limit if other insurance is not available to cover the loss, but to the extent that other insurance is available and has not been purchased as excess over its $1,100,000/$1,300,000 limits, it shall not be required to contribute ratably and, therefore, is not “collectible”
 
 (cf. Michigan Alkali Co. v Bankers Indent. Ins. Co.,
 
 103 F2d 345, 347;
 
 State Farm Mut. Auto. Ins. Co. v Universal Atlas Cement Co.,
 
 406 So 2d 1184,1187,
 
 review denied
 
 413 So 2d 877 [Fla];
 
 see, Davis v De Frank,
 
 27 NY2d 924,
 
 supra; Aetna Ins. Co. v State Auto. Mut. Ins. Co.,
 
 368 F Supp 1278, 1282).
 

 While we agree with the Appellate Division that Fire cannot be required to contribute to payment of any judgment obtained in the LiMauro and Fagan actions until the limits of both Mutual’s and Aetna’s policies have been exhausted, we reach that conclusion not on the basis that Fire’s policy speaks of
 
 *378
 
 “ultimate net loss” (103 AD2d, at p 521) or that the two policies did not “cover the same insurable risk”
 
 (id.,
 
 at p 519). Rather, we conclude that while they covered the same risk, they covered it at different levels because Fire’s “other insurance” clause limited its contribution obligation to insurance purchased to apply in excess of Fire’s own limits, and Aetna’s “other insurance” clause, essentially a pro rata provision, limited its otherwise primary coverage only by the nonowned excess provision, which was not purchased to apply in excess of Fire’s limits. Supportive of that conclusion also are the purposes for which the policies were issued (Aetna’s policy being essentially primary coverage for a specific automobile with incidental excess coverage for a nonowned automobile, and Fire’s policy providing only excess coverage for a number of different liability-causing situations), and the premium structure of the two types of coverage (Fire’s success protector premium of $144 for $1,000,000 coverage, as compared with the $119 premium for automobile coverage with $100,000/$300,000 limits, indicating that Fire intended to insure at a lesser level of risk than did Aetna).
 
 [3]
 

 Nor can we attach significance to Aetna’s arguments based upon the absence from Fire’s “other insurance” clause of the words “whether * * * stated to be primary, contributing, excess or contingent” which were contained in the
 
 Lumbermens
 
 catastrophe policy, or the fact that Aetna’s policy was not listed by Fire as an “underlying policy,” whereas in the
 
 Lumbermens
 
 case the listing of the second Allstate policy as “underlying” in the third “executive” Allstate policy was the basis for holding the third policy excess over the second. As to the first argument, it is sufficient to quote from
 
 Insurance Co. of N. Am. v Continental Cas. Co.
 
 (575 F2d 1070,1073-1074,
 
 supra):
 
 “The phrase ‘whether primary, excess or contingent’ does not add anything to the all inclusive ‘other valid’ phrase * * * The super-escape phraseology may be more specific, but its listing of other coverage still falls within the ambit of the very broad phrase ‘other valid’ insurance.” As to the second, the short answer is that while the scheduling of an underlying policy may be indicative of an intent that the policy in which it is scheduled is to be excess over the scheduled policy, the converse is not true. Nor would there be logic to giving scheduling any significance in relation to a policy such as Aetna’s containing a nonowned vehicle clause, which turns on who, other than the policyholder or a relative
 
 *379
 
 resident in the same household, is driving the car at the time of the accident and what insurance coverage is available to him or her, facts which could not have been known at the time the policy claimed to be excess was issued.
 

 It is necessary only to add that the conclusion we reach accords with case law in other State and Federal courts, subordinating a policy issued as primary automobile insurance but applicable to a particular loss only because of its nonowned “excess” coverage to a catastrophe or umbrella policy covering many different types of risk, none of them, however, on a primary basis
 
 (United Servs. Auto Assn. v Empire Fire & Mar. Ins. Co.,
 
 134 Ariz 64, 653 P2d 712,
 
 supra; Otter v General Ins. Co.,
 
 34 Cal App 3d 940,109 Cal Rptr 831;
 
 State Farm Mut. Auto. Ins. Co. v Universal Atlas Cement Co.,
 
 406 So 2d 1184,
 
 review denied
 
 413 So 2d 877 [Fla],
 
 supra; Aetna Cas. & Sur. Co. v Beame,
 
 385 So 2d 1087 [Fla];
 
 Jensen v New Amsterdam Ins. Co.,
 
 65 Ill App 2d 407, 213 NE2d 141;
 
 United States Fire Ins. Co. v Maryland Cas. Co.,
 
 52 Md App 269, 447 A2d 896;
 
 Prudential Prop. & Cas. Ins. Co. v New Hampshire Ins. Co.,
 
 164 NJ Super 184, 395 A2d 923;
 
 Safeco Ins. Co. v Insurance Co. of N. Am.,
 
 522 SW2d 867 [Tenn];
 
 Liberty Mut. Ins. Co. v United States Fire Ins. Co.,
 
 590 SW2d 783 [Tex], writ of error refused;
 
 Allstate Ins. Co. v Employers Liab. Assur. Corp.,
 
 445 F2d 1278;
 
 Berkeley v Fireman’s Fund Ins. Co.,
 
 407 F Supp 960;
 
 Aetna Ins. Co. v State Auto. Mut. Ins. Co.,
 
 368 F Supp 1278,
 
 supra).
 

 For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Jasen, Simons, Kaye, Alexander and Boomer concur; Judge Titone taking no part.
 

 Order affirmed, with costs.
 

 [1]
 

 .
 
 See, e.g.,
 
 Conn Gen Stat Ann § 38-282; S Dak Cod Laws § 58-23-4; Virginia Code § 38.1-381(a3).
 

 [2]
 

 . It is the language of Fire’s “other insurance” clause that distinguishes this case from
 
 Jefferson Ins. Co. v Glens Falls Ins. Co.
 
 (88 AD2d 925). In that case the Jefferson policy contained no “other insurance” clause although it referred to “other insurance” in its ultimate net loss provision (88 AD2d, at p 926). That reference was held equivalent to Glens Falls’ other insurance clause and, both being excess and neither being excess over excess, ratable contribution was required. Here the intent that Fire’s policy be excess over Aetna’s nonowned excess coverage turns not on Fire’s ultimate net loss clause but on the “other insurance” provision quoted in the test for the reasons there set forth. Compare the similar “other insurance” provision in the third Allstate policy involved
 
 in Lumbermens Mut. Cas. Co. v Allstate Ins. Co.
 
 (51 NY2d 651), which on the basis of that provision held that policy to be excess over the second Allstate policy issued to the driver’s mother (51 NY2d, at p 655).
 
 See also, Public Serv. Mut. Ins. Co. v Fireman’s Fund Am. Ins. Cos.
 
 (82 AD2d 403,
 
 affd
 
 55 NY2d 868), in which the Public Service policy contained a similar clause
 
 (see,
 
 82 AD2d, at p 406).
 

 [3]
 

 . Aetna’s declaration sheet is not in the record, but presumably its premium for $100,000/$300,000 automobile coverage is comparable to Mutual’s, the $119 figure in the text being Mutual’s premium for primary automobile insurance with such limits.