■ ANITA M. CASTRICONE, Plaintiff, v LAUREEN RIGGI et al., Defendants, GERALD R. TOMMASONE, Appellant, and ROTTERDAM GENERAL CONTRACTING CORPORATION, Respondent. [686 NYS2d 175] —Cardona, P. J. Appeal from an order of the Supreme Court (Caruso, J.), entered March 30, 1998 in Schenectady County, which determined that defendant Gerald R. Tommasone's excess liability insurance policy must first be exhausted before defendant Rotterdam General Contracting Corporation's commercial catastrophe excess liability policy is required to contribute.

In July 1995, plaintiff was seriously injured in an automobile accident while riding as a passenger in a vehicle operated by defendant Laureen Riggi. At the time of the accident, the vehicle was leased by Riggi's fiancee, defendant Gerald R. Tomma-

2. The Commissioner now acquiesces in Supreme Court's rulings and statutory interpretation.

sone and Tommasone's closely held corporation, defendant Rotterdam General Contracting Corporation (hereinafter Rotterdam).

Plaintiff commenced this personal injury action against Riggi, Tommasone and Rotterdam. Prior to trial, Tommasone's insurance carrier, C.N.A. Insurance Company (hereinafter CNA), and Rotterdam's insurance carrier, Royal Insurance Company (hereinafter Royal), agreed to settle the action for $2,500,000. Both CNA and Royal agreed that CNA would pay the total of its primary policy limits of $500,000 and Royal would pay the total of its primary policy limits of $1,000,000 toward the settlement. They further stipulated that the remaining $1,000,000 due to plaintiff would be paid from the excess policies provided by each carrier in proportions to be determined by Supreme Court. Supreme Court ruled that the CNA excess liability policy in the full amount of $500,000 had to be exhausted before the Royal commercial catastrophe excess liability policy was required to contribute. Tommasone appeals.

Tommasone, through its insurer CNA, argues that the excess benefits provided under the Royal policy must be exhausted before contribution is obtained from the CNA policy. Based upon our review of the relevant policy provisions, we disagree. Initially, we note that as a general rule where there are multiple liability insurance policies covering the same risk, the excess coverage clauses cancel each other out and each carrier contributes ratably in such proportion as its policy limit bears to the total of all policy limits (*see, State Farm Fire & Cas. Co. v LiMauro*, 65 NY2d 369, 373-374; *Lumbermen's Mut. Cas. Co. v Allstate Ins. Co.*, 51 NY2d 651, 655). This rule, however, is inapplicable where it would "effectively deny and clearly distort the plain meaning of the terms of the policies of insurance * * * involved" (*Lumbermen's Mut. Cas. Co. v Allstate Ins. Co., supra*, at 655; *see, State Farm Fire & Cas. Co. v LiMauro, supra*, at 374). "Whether there will be such distortion turns on consideration of the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it * * * as well as upon the wording of its provision concerning excess insurance" (*State Farm Fire & Cas. Co. v LiMauro, supra*, at 374 [citations omitted]).

In the instant case, the CNA policy issued to Tommasone specifically insured the vehicle Riggi was driving and provided $500,000 of personal liability coverage and $500,000 of optional excess liability coverage. The optional excess liability coverage provision stated, in pertinent part, that "[CNA] will pay damages for which a *covered person* becomes legally liable due to

*personal injury, bodily injury* or *property damage* up to the limit of liability shown on the cover summary for *"Optional Excess Liability"* (emphasis in original). The policy further provided, with respect to "Other Insurance", that: "During the first and subsequent years of this policy for those exposures shown effective in the coverage summary, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits."

The policy issued by Royal to Rotterdam also covered the vehicle Riggi was driving at the time of the accident. Notably, the policy, entitled a "big shield commercial catastrophe liability policy", provided primary liability coverage of $1,000,000 and excess liability coverage of $5,000,000. With respect to the excess liability coverage, the policy provided that: "[Royal] will pay those sums, in excess of the amount payable under the terms of any underlying insurance, that the insured becomes legally obligated to pay as damages because of injury or damage to which this insurance applies, provided that the underlying insurance also applies, or would apply but for the exhaustion of its applicable limits of insurance." In regard to "Other Insurance", the policy further provided that "[t]his insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except other insurance written specifically to be excess over this insurance". Furthermore, the binder specifically listed the CNA policy as underlying liability insurance to which the Royal policy was subject.

In view of the insurance binder, the language of the "Other Insurance" provision and the policy's designation as a "catastrophe" liability policy, the intent clearly was that the excess liability coverage provided under the Royal policy would apply after the exhaustion of other excess policies (*see, State Farm Fire & Cas. Co. v LiMauro, supra*, at 375-376; *Lumbermen's Mut. Cas. Co. v Allstate Ins. Co., supra*, at 655). The CNA policy, in contrast, by its very terms expressly contemplated contribution with other excess policies (*see, State Farm Fire & Cas. Co. v LiMauro, supra*, at 375). Consequently, Supreme Court properly found that excess coverage under the CNA policy had to be exhausted prior to contribution from the Royal policy.

Furthermore, CNA asserts that access to its excess liability coverage is precluded because Riggi is not a family member and not included in the definition of a "covered person" for purposes of this coverage. We find the argument unpersuasive. The definitional section of the CNA policy stated generally

that: "Covered Person(s) mean you and the following residents of your household: a. Your family members; b. any other person under the age of 21 who is in the care of any person named above". This section further provided, for purposes of personal liability coverage, that: "covered person *also* means: * * * g. Any other person using or occupying your motor vehicle or boat, if there is a reasonable belief that person was permitted to use it" (emphasis supplied). This section went on to state, with respect to optional excess liability coverage, that: "covered person *also* includes: * * * h. Family members for their use of an automobile: (1) Owned by a family member; or (2) Furnished or available for the regular use of a family member" (emphasis supplied). Unlike CNA, we do not read the above provisions as limiting excess liability coverage to covered persons who are family members. Rather, we find that use of the word "also" in defining a covered person for purposes of excess coverage evinces an intent to incorporate the descriptions contained in the preceding paragraphs which include permissive users of automobiles belonging to the insured. Inasmuch as there is no dispute that Riggi was a permissive user of the vehicle involved in the accident, there is coverage under CNA's excess liability policy.

Contrary to CNA's claim, the fact that the CNA policy provided coverage to the lessors of the vehicle who may only be held vicariously liable for Riggi's active negligence pursuant to Vehicle and Traffic Law § 388 does not mandate a contrary conclusion (*see, Utica Mut. Ins. Co. v Preferred Mut. Ins. Co.,* 180 AD2d 195). In view of our disposition, we need not consider CNA's argument regarding the applicability of the antisubrogation rule to the facts at hand.

Mercure, Spain, Carpinello and Graffeo, JJ., concur. Ordered that the order is affirmed, with costs.