■ In the Matter of GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellant, v AYELET S. SHLOMY et al., Respondents. [762 NYS2d 397] —In a proceeding pursuant to CPLR article 75, inter alia, to permanently stay arbitration of an underinsured motorist claim, and, in effect, for a judgment declaring that Auto Owners Insurance Company is required to provide primary underinsured motorist benefits, the petitioner appeals from so much of an order of the Supreme Court, Kings County (Garry, J.), dated February 11, 2002, as denied the petition.

Ordered that the order is reversed insofar as appealed from, on the law, with one bill of costs to the appellant, the petition

is granted, and the matter is remitted to the Supreme Court, Kings County, for the entry of a judgment declaring that Auto Owners Insurance Company is required to provide primary un- derinsured motorist benefits.

On March 3, 1995, Ayelet Salem Shlomy was a passenger in a vehicle owned by Henry Barnathan and insured by Auto Owners Insurance Company (hereinafter Auto Owners). The Barnathan vehicle was involved in a two-vehicle collision with a vehicle owned by Yaacob Amit and insured by nonparty Countrywide Insurance Company (hereinafter Countrywide). Shlomy allegedly sustained serious personal injuries in the collision.

The liability policy issued by Countrywide to Amit had li- ability limits of $25,000. The policy issued by Auto Owners to Barnathan (hereinafter the Auto Owners policy), issued in South Carolina, provided underinsured motorist coverage in the amount of $100,000. It also provided, inter alia, that if there was other underinsured motorist coverage, Auto Owners would pay only its share of the loss, which would be "the proportion [its] limit of liability bears to the total of all limits which apply." Shlomy was also covered as an insured under a liability policy issued by the petitioner, Government Employ- ees Insurance Company (hereinafter GEICO), to Shlomy's father. That policy provided underinsured motorist coverage in the amount of $250,000. It also provided, in relevant part, that if an insured was entitled to underinsured coverage under more than one policy, the insured had to first obtain underin- surance benefits from a policy covering a motor vehicle oc- cupied by the injured person at the time of the accident, in this case the Auto Owners policy.

Following the accident, Shlomy brought an action against Amit and Barnathan to recover damages for the personal injuries she sustained in the accident. After a trial on the issue of liability, the jury returned a verdict finding Amit 100% at fault in the happening of the accident. After the liability verdict, Countrywide offered to tender the full amount of its policy to settle the action. Shlomy's attorney informed GEICO of this offer, and GEICO consented to its acceptance. Although Auto Owners' attorney knew of Countrywide's tender of the policy limits, Shlomy's attorney did not seek Auto Owners' consent that she accept it. Nor, however, did Auto Owners' at- torney object to its acceptance.

Thereafter, Shlomy filed a claim for underinsurance benefits with GEICO, but apparently not with Auto Owners. Shlomy and GEICO could not settle the claim, leading Shlomy to file a

demand for arbitration of her claim. Eventually, GEICO commenced the instant proceeding in the Supreme Court, Kings County, pursuant to CPLR 7503 (c) to permanently stay arbitration or, alternatively, inter alia, temporarily stay arbitration pending a determination of the issue of whether Auto Owners should provide primary underinsurance. In its petition, GEICO asserted that pursuant to its policy, Shlomy was required to make a claim for underinsurance benefits under the policy covering the vehicle in which she was an occupant (i.e., the Auto Owners policy) before she could recover underinsurance benefits from GEICO.

Auto Owners opposed the petition, claiming that it was not required to provide underinsurance coverage because Shlomy settled the underlying action against Amit without its consent. Furthermore, it asserted that even if it provided underinsurance coverage to Shlomy, "it would be no more than a co-insurer with GEICO" because of the provision in its policy which provided that its share of any loss was limited to "the proportion [its] limit of liability bears to the total of all limits which apply."

In response, Shlomy cross-petitioned, inter alia, for a determination of "the proportion of underinsurance the insurers are responsible for once there is an award." Auto Owners opposed the cross petition on the ground that Shlomy failed to serve it with copies of the pleadings in the underlying action, as required by South Carolina law. In its partial opposition to the cross petition, GEICO stated that it "is not disputing or disclaiming underinsurance motorist coverage," but rather, that it is merely seeking a declaration that Auto Owners must afford primary underinsurance coverage pursuant to the terms of the GEICO policy.

By order of the Supreme Court, Kings County, dated September 21, 2001, Auto Owners and Barnathan were added as additional respondents to the instant proceeding, and the parties were directed to appear before the court to resolve the outstanding issues. By order dated February 11, 2002, the Supreme Court denied the remainder of GEICO's petition and dismissed the proceeding, finding that GEICO was estopped from denying underinsurance coverage to Shlomy. In effect, the court also denied Shlomy's cross petition. On appeal by GEICO, we reverse the order insofar as appealed from by granting the petition and directing the entry of a judgment declaring that Auto Owners provide primary underinsurance benefits in the subject arbitration.

To the extent that it contends that the Supreme Court lacked

personal jurisdiction over it, Auto Owners waived this argument by appearing and opposing the petition and cross petition on the merits (*see Matter of State Farm Mut. Ins. Co. v Genao,* 175 AD2d 164 [1991]).

Next, we reject Auto Owners' contention that Shlomy is precluded from seeking underinsurance motorist benefits from it because she did not obtain its consent to settle the underlying action against Amit. As noted above, the Auto Owners' policy was issued to Barnathan in South Carolina, and its underinsured motorist endorsement provided that if it conflicted with the South Carolina Uninsured Motorists Law, the endorsement was "changed to comply with the law." Under the South Carolina Uninsured Motorist Law, "[n]o underinsured motorist policy may contain a clause requiring the insurer's consent to settlement with the at-fault party" (Code of Laws of South Carolina § 38-77-160). Thus, Auto Owners could not require that Shlomy obtain its consent to settle the underlying personal injury action against Amit before obtaining underinsurance motorist benefits from it. Even if Shlomy was required to obtain Auto Owners' consent to settle that action, Auto Owners waived that policy provision by its failure to disclaim coverage on that basis. By letter dated June 26, 1995, Shlomy's counsel informed Auto Owners that Shlomy would be making a claim for underinsurance benefits under the Auto Owners policy. However, Auto Owners never disclaimed coverage of Shlomy's claim on any basis (*see* Insurance Law § 3420 [d]; *Matter of Merchants Mut. Ins. Co. v Falisi,* 99 NY2d 568 [2003]; *Hartford Ins. Co. v County of Nassau,* 46 NY2d 1028 [1979]; *Markevics v Liberty Mut. Ins. Co.,* 278 AD2d 285 [2000], *affd* 97 NY2d 646 [2001]).

We also agree with GEICO that the Supreme Court improperly determined that it was estopped from denying underinsurance coverage for Shlomy. As previously noted, GEICO conceded before the Supreme Court that it was not disclaiming underinsurance motorist coverage, but rather, seeking a determination that Auto Owners must afford primary underinsurance coverage under the facts of this case.

We agree with GEICO that, under the policies as written, Shlomy must first seek underinsurance benefits from Auto Owners. In situations such as the instant case, where one policy provides, in effect, that it is an excess policy and another policy provides for pro rata contribution with other valid and collectible insurance, the Court of Appeals has held that the excess policy is secondary because the effect of the policy which requires pro rata contribution "was 'only to require prorata

contribution by other primary insurance'" (*State Farm Fire & Cas. Co. v LiMauro,* 65 NY2d 369, 373 [1985], quoting *General Acc. Fire & Life Assur. Corp. v Piazza,* 4 NY2d 659, 669 [1958]).

Auto Owners' remaining contentions are without merit. Altman, J.P., Florio, Friedmann and H. Miller, JJ., concur.