**PHILADELPHIA INDEMNITY INSURANCE COMPANY,**
Plaintiff,

v.

**EMPLOYERS INSURANCE COMPANY OF WAUSAU,**
Defendant.

No. 02 Civ.2069(GEL).

United States District Court,
S.D. New York.

March 11, 2004.

Francine N. Nisim, Duane Morris LLP, New York, N.Y. (Mitchell L. Lathrop, on the brief), for Plaintiff.

Rachel Rose Hager, Budd Larner Rosenbaum Greenberg & Sade, P.C., New York, N.Y. (Christopher S. Finazzo, on the brief), for Defendant.

*OPINION AND ORDER*

LYNCH, District Judge.

Children's Discovery Centers and Knowledge Universe ("Children's Discovery") ran a daycare center at the World Trade Center in Manhattan, which the September 11, 2001 terrorist attacks destroyed. On that date, because of a transition in insurance coverage, both plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") and defendant Employers Insurance Company of Wausau ("Wausau") insured Children's Discovery for property damage. The parties jointly paid Children's Discovery's claim, without prejudice to their legal rights, and now dispute the proper allocation of liability. Before the Court are cross-motions for summary judgment. For the reasons that follow, Wausau's motion will be granted and Philadelphia's motion denied.

## BACKGROUND

On September 11, 2001, Children's Discovery operated a daycare center at 5 World Trade Center in Manhattan. (D. Rule 56.1 Stmt. ¶ 1.) On that date, it held two policies that insured the center for property damage and associated losses.[1] Wausau's policy, which covered Children's Discovery from September 15, 2000, until September 15, 2001, limited Wausau's liability to $15 million per occurrence. (*Id.* ¶¶ 4, 7.) Philadelphia's policy, which covered Children's Discovery from September 1, 2001, until September 1, 2002, limited Philadelphia's liability to about $250 million per occurrence. (*Id.* ¶¶ 9, 11.)

Both policies included "other insurance" clauses, which made each insurer's obligation to pay a claim contingent on the insured's obligation to first exhaust other insurance that covered the same risk. (*Id.* ¶¶ 8, 12–13; P. Br. 5–6.) Wausau's "other insurance" clause provided, subject to exceptions not relevant here, that Wausau would "not pay for covered loss to covered property unless the amount of any other insurance [wa]s exhausted." (Finazzo Cert., Ex. C.) Philadelphia's "other insurance" clause provided:

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

(*Id.*, Ex. F.)

After the September 11, 2001 terrorist attacks destroyed its daycare center, Children's Discovery submitted claims to Philadelphia and Wausau. (D. Rule 56.1 Stmt. ¶ 3.) The insurers each made an initial advance payment of $250,000 to Children's Discovery, without prejudice to their legal positions in potential litigation. Philadelphia then brought this action against Wausau, seeking a judgment declaring the appropriate allocation of Children's Discovery's loss. Wausau named Children's Discovery as a third-party defendant, but the insurers subsequently settled with Children's Discovery for a total of $2,790,000; each paid $1,145,000 in addition to the $250,000 payment already made. (D.Br.7.) The parties agree that the appropriate allocation of liability as between them is a pure question of law and therefore cross-move for summary judgment.

## DISCUSSION

### I. *Standard for Summary Judgment*

Summary judgment must be granted where "there is no genuine issue as to any material fact and . . . the moving party is

---

1. In August 2001, Children's Discovery, which previously maintained separate insurance policies for first-party property damage and liability, decided to acquire a single policy to cover both. Philadelphia agreed to provide that policy, but because Philadelphia's policy, unlike that of Wausau, did not cover property damage arising from floods or earthquakes, Children's Discovery left the Wausau policy in effect until its natural expiration date, September 15, 2001, in order to afford itself an additional two weeks within which to acquire coverage for those natural disasters. Children's Discovery therefore held overlapping insurance coverage during the two-week period from September 1 to 15, 2001. (D.Br.4.)

entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties do not dispute any material facts, and the interpretation of unambiguous provisions in insurance contracts is a pure question of law. *Mazzuoccolo v. Cinelli*, 245 A.D.2d 245, 666 N.Y.S.2d 621, 622–23 (1st Dep't 1997).

## II. *Choice of Law*

In this diversity action, the choice-of-law rules of New York, the forum state, govern. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In the context of "that special subset of contracts that involves insurance," New York law calls for application of " 'the local law of the state which the parties understood was to be the principal location of the insured risk.' " *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 318, 618 N.Y.S.2d 609, 642 N.E.2d 1065 (1994), quoting Restatement (Second) of Conflict of Laws § 6 (1971); *O'Neill v. Yield House Inc.*, 964 F.Supp. 806, 809 (S.D.N.Y.1997). Where, as here, the insurance policies at issue cover risks in more than one state, the Restatement suggests that a more complicated analysis may apply. *See In re Payroll Express Corp.*, 921 F.Supp. 1121, 1125 n. 6 (S.D.N.Y.1996). The Court need not, however, decide whether New York would follow the Restatement or engage in that analysis because both "parties' briefs assume that New York law controls, and such implied consent ... is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir.2000) (internal quotation marks omitted).

## III. *Analysis Under New York Insurance Law*

Both the Wausau and Philadelphia policies conditioned the insurer's obligation to satisfy claims on the insured's obligation first to exhaust any other insurance that covered the same risk, and both covered the loss sustained by Children's Discovery. This naturally raises the question how to reconcile those policies. New York law provides a clear answer: "[W]here there are multiple policies covering the same risk, and each generally purports to be in excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance." *Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*, 51 N.Y.2d 651, 655, 435 N.Y.S.2d 953, 417 N.E.2d 66 (1980); *see, e.g., Macari v. Nationwide Mut. Ins. Co.*, 296 A.D.2d 384, 745 N.Y.S.2d 191, 193 (2d Dep't 2002); *Gen. Accident Ins. Co. v. Gobetz*, 234 A.D.2d 599, 651 N.Y.S.2d 623, 624–25 (2d Dep't 1996); *Allstate Ins. Co. v. Bieder*, 212 A.D.2d 693, 622 N.Y.S.2d 814, 814–15 (2d Dep't 1995); *Tarolli v. Cont'l Cas. Co.*, 181 A.D.2d 1021, 581 N.Y.S.2d 510, 511 (4th Dep't 1992); *Hosp. Underwriters Mut. Ins. Co. v. Nat'l Cas. Co.*, 150 A.D.2d 636, 541 N.Y.S.2d 512, 513 (2d Dep't 1989); *Aetna Cas. & Sur. Co. v. Liberty Mut. Ins. Co.*, 91 A.D.2d 317, 459 N.Y.S.2d 158, 163 (4th Dep't 1983) (all applying the general rule stated in *Lumbermens* ). By contrast, where one policy "expressly negates contribution with other carriers, or otherwise manifests that it is intended to be excess over other excess policies," *State Farm Fire and Cas. Co. v. LiMauro*, 65 N.Y.2d 369, 374, 492 N.Y.S.2d 534, 482 N.E.2d 13 (1985), other policies that cover the same risk, including those with merely "general" excess insurance clauses–that is, excess insurance clauses that do not purport to be excess in relation to other *excess* policies–must be exhausted before the former policy becomes obliged to pay.

Wausau and Philadelphia agree that neither policy's excess clause expressly ne-

gates the other. Neither, that is, purports to be excess not only in relation to other primary insurance, but also in relation to other excess insurance.[2] *See United Nat'l Ins. Co. v. Lumbermens Mut. Cas. Co.,* No. 89 Civ. 3869, 1994 WL 259820, at *5 (S.D.N.Y. June 8, 1994). The parties also agree that because their respective excess insurance clauses stand in a mutually repugnant relationship, each cancels the other out. (D. Br. 1, 8; P. Br. 12, 16; P. Opp. Br. 2) *See Great N. Ins. Co. v. Mount Vernon Fire Ins. Co.,* 92 N.Y.2d 682, 687, 685 N.Y.S.2d 411, 708 N.E.2d 167 (1999); *Lumbermens,* 51 N.Y.2d at 655, 435 N.Y.S.2d 953, 417 N.E.2d 66. The sole issue is therefore whether, as Wausau contends, the general rule articulated in *Lumbermens,* that "each insurer contributes in proportion to its limit amount of insurance," applies, or whether, as Philadelphia contends, some exception to that rule applies on the facts presented here.

The general rule, sometimes referred to in the case law as the rule of ratable contribution, applies unless "its use would effectively deny and clearly distort the plain meaning of the terms of the policies of insurance." *Lumbermens,* 51 N.Y.2d at 655, 435 N.Y.S.2d 953, 417 N.E.2d 66. The New York Court of Appeals has said that "[w]hether there will be such distortion turns on consideration of the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it, as well as upon the wording of its provision concerning excess insurance." *State Farm,* 65 N.Y.2d at 374, 492 N.Y.S.2d 534, 482 N.E.2d 13 (internal citations omitted). But the cases that recognize an exception to the rule of ratable contribution, as did *Lumbermens* itself, concern how to effectuate excess clauses that disclose an intent to trump other, merely general, excess clauses.[3] Philadelphia cites no New York case in which the "distortion" exception articulated in *Lumbermens,* 51 N.Y.2d at 655, 435 N.Y.S.2d 953, 417 N.E.2d 66, and further elaborated in *State Farm,* 65 N.Y.2d at 374–76, 492 N.Y.S.2d 534, 482 N.E.2d 13, has been applied to modify the rule of ratable contribution in the context of two insurers who concede that neither is excess in relation to the other.

Philadelphia nonetheless argues that the rule of ratable contribution should not be applied here because (1) the "parity of premiums" under its policy and the Wausau policy manifests "a clear intent by the

**2.** The "other insurance" clause in Philadelphia's policy contains two paragraphs. The first applies to other insurance "subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part," the second to "other insurance covering the same loss or damage, other than that described in [paragraph] 1." (Finazzo Cert., Ex. F.) The parties agree that the second paragraph applies here. (D. Br. 10–11; P. Br. 12–16.)

**3.** *See State Farm,* 65 N.Y.2d at 375–76, 492 N.Y.S.2d 534, 482 N.E.2d 13 (distilling from the case law and applying the general rule that "an insurance policy which purports to be excess coverage but contemplates contribution with other excess policies or does not by the language used negate that possibility must contribute ratably with a similar policy, but must be exhausted before a policy which expressly negates contribution with other carriers, or otherwise manifests that it is intended to be excess over other excess policies"); *Lumbermens,* 51 N.Y.2d at 655–57, 435 N.Y.S.2d 953, 417 N.E.2d 66 (distinguishing different tiers of insurance coverage based on the language of various excess clauses); *Am. Transit Ins. Co. v. Cont'l Cas. Ins. Co.,* 215 A.D.2d 342, 625 N.Y.S.2d 653, 654 (2d Dep't 1995) (applying the "distortion" exception to find one insurer to be primary and the other excess relative to the insured's claim); *United Nat'l Ins. Co.,* 1994 WL 259820, at *5 ("Applying *State Farm* to the case at hand, the discernible difference between the 'other insurance' clauses in the two policies is convincing evidence that the [defendant's] [p]olicy was intended as excess to other excess coverage, and thus, the final tier.").

parties to provide the same layer of coverage" to Children's Discovery (P. Br.18.); and (2) most of the New York cases where the general rule has been applied arose out of motor vehicle accidents, where the various insurers had insured different insureds against similar risks, whereas here, "both insurers were protecting the *same* insured against the *same* risk." (*Id.* 21 (emphasis in original); *see also* P. Opp. Br. 3–4.)

New York law does not support either of these arguments. Philadelphia cites two cases, *Castricone v. Riggi*, 259 A.D.2d 815, 686 N.Y.S.2d 175 (3d Dep't 1999), and *Allstate Insurance Co. v. Insurance Co. of North America*, 215 A.D.2d 612, 628 N.Y.S.2d 137 (2d Dep't 1995), for the proposition that courts depart from the general rule where necessary to effectuate the intent of the policies. (P. Br.17.) Both of those cases, however, involved the construction of competing "other insurance" clauses. In each, the Appellate Division simply applied the rule in *State Farm*, 65 N.Y.2d at 375–76, 492 N.Y.S.2d 534, 482 N.E.2d 13, under which, as explained above, "[a] policy specifically shown to be excess to other excess policies creates a higher level of coverage and is not required to contribute ratably with mere excess policies." *Allstate Ins. Co.*, 628 N.Y.S.2d at 138; *see id.* (finding the rule of ratable contribution inapplicable where one of the two insurers' policies "clearly show[ed] that [its] policy [wa]s excess to the excess liability policy of [the other]"); *Castricone*, 686 N.Y.S.2d at 177–78 (finding the rule of ratable contribution inapplicable where one policy manifested a clear intent to apply only "after the exhaustion of other excess policies," while the other "expressly contemplated contribution with other excess policies"). These cases therefore support only the narrow proposition, which Wausau does not dispute, that where two policies cover the same risk, one with a general excess clause, the other with an excess clause that specifically negates other excess clauses, the rule of ratable contribution does not apply; rather, the policy with the merely general clause is deemed primary and must be exhausted before the other becomes obliged to contribute at all.

It is in this context that the size of premiums may become relevant, for in some cases a lower premium may reflect the comparatively lower risk that an excess insurer bears relative to a primary insurer. *See Lumbermens*, 51 N.Y.2d at 656, 435 N.Y.S.2d 953, 417 N.E.2d 66 ("Presumably the premiums for this policy reflected the rarity of Lumbermens' ultimate requirement to contribute to a settlement."); *U.S. Fire Ins. Co. v. Fed. Ins. Co.*, 858 F.2d 882, 885 (2d Cir.1988) ("[P]remium size may be an important factor in determining priority of coverage."). At the same time, as the Second Circuit noted, any such "analysis must consider whether premium disparity instead reflects disparities in the degree of risk covered." *Id.* Here, neither the Philadelphia nor the Wausau policy includes an excess clause that manifests a clear intent to trump other excess clauses. Neither is an excess insurer relative to the other. Philadelphia's reliance on the parity between its premium and that of Wausau is therefore misplaced. Unlike in the excess insurance cases cited by Philadelphia, a comparison of the premiums in this case casts no light on whether one insurer should be deemed an excess insurer relative to the other. And without, to borrow a phrase from Wausau's expert, "immersing [itself] as a 'super-underwriter' " in this dispute (Priest Rep. ¶ 29), the Court remains ill equipped to determine the "real" reason for the parity in premiums, even assuming *arguendo* that New York law authorizes courts to engage in this exercise. *Cf. Cont'l Cas. Co. v. Aetna Cas. and Sur. Co.*, 823 F.2d 708, 712 (2d Cir.1987) (observing, in applying Connecticut's comparable rule

of ratable contribution, that "[b]ecause insurance policies cover different *types* of risk as well as different amounts, premium charges cannot rationally be compared") (emphasis in original). Philadelphia cites no case in which a New York court has departed from the rule of ratable contribution based solely on the parity or disparity in premiums. Nor has any New York court used such a comparison, as Philadelphia would have the Court do, to discern the purported intent of two insurers as to how they would share a loss for which both concededly bear primary liability. While this case may well present "unique facts" (P. Opp.Br.3), New York law does not authorize departure from the rule of ratable construction on that basis.

Philadelphia cites no authority in support of its other objection to the rule of ratable contribution. It is true that the rule most often applies in the context of motor vehicle accidents (P. Br. 20–21; P. Opp. Br. 3–4 & n. 3), but no case or other authority suggests that it is limited to that context. Indeed, Philadelphia acknowledges that the rule of ratable contribution has also been applied in the context of claims based on environmental damage, *see, e.g., Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F.Supp. 1416, 1436 (S.D.N.Y.1991), and at least one New York case, *Lumber Mutual Insurance Co. v. Lumberman's Mutual Casualty Co.*, 186 A.D.2d 637, 588 N.Y.S.2d 630 (2d Dep't 1992), applied it to facts relevantly similar to those presented here. In *Lumber Mutual*, plaintiff and defendant insured "the same premises, a shopping center, for overlapping periods of time," during which the roof of those premises sustained damage from a hurricane. *Id.* at 631. The plaintiff paid the insured's claim and then sought contribution from the defendant, which had initially disavowed coverage based on the insured's alleged violation of a provision of its policy. After affirming the trial court's holding that the defendant

improperly disclaimed coverage on that basis, the Appellate Division proceeded to apply the general rule of ratable contribution to allocate the loss among the two insurers. *Id.* This decision, while brief, affirms that New York's rule of ratable contribution applies to situations like the present one, that is, where two primary insurers have insured the same premises for the same risk during the same period of time.

Finally, Philadelphia objects that applying the rule of ratable contribution will be unfair in this case. Were the Court writing on a blank slate or resolving this case as a matter of equity, it might agree. But as the Second Circuit recognized in a comparable context, while "no method of apportioning liability is entirely satisfactory," "because we must apply the law of Connecticut, we do not write on a blank slate." *Cont'l Cas. Co.*, 823 F.2d at 712. Equally, the Court cannot disregard New York law and depart from the rule of ratable contribution because, in this case, it arguably produces an unfair result. New York law provides a clear, manageable, and predictable rule that resolves the dispute presented here. While this rule may not always produce equitable results, the costs of administering a more complex rule that would compel the Court to engage in the kind of equitable analysis urged by Philadelphia would be prohibitive, and the consequences unpredictable, for any such rule would effectively leave insurers and their risk-analyzers to guess at courts' potential *ad hoc* judgments of fairness in a theoretically unlimited variety of factual scenarios.

Moreover, while the unequal division of liability prescribed by New York law may seem unfair from a perspective internal to this dispute, from an external perspective, it can hardly be so characterized. If the terrorist attacks that destroyed Children's Discovery's premises occurred on August

31, 2001, Wausau would have been obliged to pay 100% of Children's Discovery's loss. If those attacks took place on September 16, 2001, Philadelphia would have been obliged to pay 100% of the loss. That the attacks fortuitously happened during the brief period of overlapping coverage relieves both Philadelphia and Wausau from full liability; each, in some sense, will thus receive a "windfall" by virtue of the dual coverage. Under New York law, Wausau's "windfall" will be far greater, but that does not make Philadelphia's exemption from paying the full amount of the claim any less real. The result of applying New York's rule of ratable contribution can therefore hardly be characterized as "grossly unfair." (P. Br.19.)

### CONCLUSION

Because New York law clearly establishes that in these circumstances, the insurers must pay the claim on a *pro rata* basis in proportion to their respective liability limits, Wausau's motion for summary judgment is granted and Philadelphia's denied. Judgment shall be entered in accordance with Wausau's proposed order.

SO ORDERED.